[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**April 13, 2005**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 03-10350

_____

D. C. Docket No. 01-00812-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE ROLANDO GARCIA,
LEONARDO ANTONIO ENRIQUEZ-VALDES,
a.k.a. Leo,
ALBERTO ARTIRES,
ENICIO MERCADO,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(April 13, 2005)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and RESTANI*, Judge.

PER CURIAM:

We withdraw our previous opinion issued on March 22, 2005, and replace it with this opinion.

This appeal arises out of the convictions and sentences of appellants Jose Rolando Garcia, Leonardo Antonio Enriquez-Valdes, Alberto Artires, and Enicio Mercado. After a twelve day trial, a jury found these four appellants guilty of conspiracy to manufacture and possess with intent to distribute 100 or more marijuana plants in violation of 21 U.S.C. § 846. Garcia, Valdes and Artires were also convicted for maintaining a place for the purpose of manufacturing marijuana in violation of 21 U.S.C. § 856(a)(1). Additionally, the jury found Valdes and Artires guilty of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1).[1]

On appeal, the appellants contend that the district court made a variety of errors, including: (1) the denial of appellants' motions seeking judgment of

---

*Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

[1]The jury acquitted both Garcia and Mercado of charges that they knowingly and intentionally manufactured marijuana, acquitted Mercado of a charge that he knowingly maintained a place for the purpose of manufacturing marijuana, and acquitted Julio Artires on all charges against him. Additionally, the jury found co-defendant Felipe Suarez guilty on all counts charged against him. However, Suarez did not appeal either his conviction or his sentence.

acquittal on insufficiency of the evidence grounds; (2) the admission of improper and irrelevant evidence; (3) the denial of joint motions for mistrial or, in the alternative, severance based on the alleged improper and prejudicial closing argument of counsel for Valdes; (4) the rejection of Garcia's proposed jury instruction for accessory after the fact; (5) at sentencing, the denial of Valdes's motion for a reduction in sentence pursuant to U.S.S.G. § 5C1.2, the "safety-valve" provision; and (6) at sentencing, the court's finding that Alberto Artires was responsible for over 300 marijuana plants when the jury specifically found that he was not involved in more than 100 marijuana plants.[2]

As to the convictions and sentences of Garcia and Mercado, we find no error and affirm. As to Valdes and Alberto Artires, we affirm their convictions, but vacate the judgments and remand for re-sentencing.

## I.    FACTUAL BACKGROUND

This case involves a network of marijuana grow houses, both active and dismantled, located throughout South Florida. During the course of the government investigation, which spanned over a period of one and one-half years, agents searched and investigated at least twelve residences located in and near

_____

[2]All other issues raised on appeal do not merit further discussion and are summarily rejected.

3

Miami.[3]

In May of 2000, the FBI received a confidential tip that Yovanni Espinosa was operating a grow house in an efficiency apartment behind a house located at 15604 N.W. 37th Avenue in Opa Locka, Florida. Upon executing a search warrant at this location on June 19, 2000, agents discovered a fully functioning marijuana grow house with 104 marijuana plants plus additional decomposing plants. The subject apartment had a high-voltage lighting system, a self-contained irrigation and fertilization system, Mylar-covered walls, and large air conditioning units. The agents also discovered miscellaneous photographs at the residence. One photograph was a picture of a group of men, including co-defendants Alberto Artires, Felipe Suarez, Enicio Mercado, Javier Rey, and Pedro Pablo Aldao. Another picture depicted a house numbered "8504" and what appeared to be the same vehicle as a vehicle located at the house being searched.

---

[3]The cultivation of marijuana requires a very controlled environment. Marijuana grow houses are sealed both to conceal the illegal activity and to keep out the natural light. High-wattage fluorescent lights are used to focus artificial light on the plants and Mylar film is attached to the walls to stimulate growth and allegedly minimize detection by infra-red detection devices. Because the artificial light emits large quantities of heat, grow houses are typically equipped with a venting system including exhaust fans and large air conditioning units.

Young marijuana plants are first grown in plastic starter trays before they are transplanted to a material called "rock wool" and placed in large buckets with ceramic rocks called "grow rocks." Together, the rock wool and grow rocks act as a soil substitute. Water and fertilizer are pumped through PVC pipes into holes drilled in the buckets. To harvest the marijuana narcotic, the leaves and stems on the plants are clipped away and the collases, large masses of buds covered with a sticky resin, are hung to dry.

On June 20, 2000, the agents searched Espinosa's property located at 2968 Northwest 87th Terrace in Miami, Florida. At this address, the agents met Aldao and discovered 48 mature marijuana plants that had been harvested and were hanging to dry. Additionally, agents found 47 immature marijuana plants, marijuana seedlings in starter trays, two live mother plants, and equipment used to hydroponically grow marijuana.

On June 21, 2000, at Espinosa's 15604 N.W. 37th Avenue residence, the agents seized a photograph containing a sports utility vehicle, which they later determined was registered to co-defendant Felipe Suarez. Upon searching Suarez's residence located at 8504 Sheraton Drive, Miramar, Florida[4] that same day, agents found decomposing marijuana material, paraphernalia for growing marijuana, and a bedroom that appeared to have been equipped to grow marijuana, but had been dismantled.

Having received confidential information while at 8504 Sheraton Drive, the agents immediately searched 8545 Long Acre Drive in Miramar, Florida. After Mario Artires, the brother of Alberto Artires, consented to the search, the agents discovered 90 marijuana plants and marijuana cultivation paraphernalia in a bedroom that had been converted into a grow lab.

---

[4]Suarez was listed as the subscriber on the electric records for 8504 Sheraton Drive from October 12, 1999 through December 15, 2000.

On June 23, 2000, in response to information from a confidential source, the agents searched a home at 9290 S.W. 149th Street, Miami, Florida, the home of Reynaldo Artires, brother of Alberto and Mario Artires. There, agents found marijuana cultivation materials and a dismantled grow house in Reynaldo's garage, but did not find any marijuana plants. After noticing that Reynaldo's driver's license listed 1165 W. 33rd Street, Hialeah, Florida, as his address instead of the home being searched, the agents immediately continued to that address. At 1165 W. 33rd Street, the agents met Garcia, who told them that he was renting the house from Reynaldo. The agents did not find anything in the residence, but a police dog alerted them to potential contraband in an efficiency apartment adjoining the house and a white van parked in the driveway. In the apartment, the agents discovered marijuana cultivation materials, marijuana leaves, and a dismantled grow house. Notably, two fingerprints on the Mylar film covering the walls in the apartment matched the fingerprints of Garcia. Additionally, the white van, which was registered to Garcia, contained a plastic starter tray, five-gallon buckets, PVC piping, and other materials that the agents had observed in other grow houses during the investigation of this conspiracy.

On July 5, 2000, agents searched 3092 N.W. 15th Street, Miami, Florida. Espinosa had previously lived at this address until it was purchased by Suarez.

6

Upon the arrival of the agents, the current tenant, Javier Rey, an indicted co-conspirator who pled guilty prior to trial, consented to the search. At 3092 N.W. 15th Street, the agents discovered a dismantled grow house and marijuana cultivation materials. On July 10, 2000, agents searched a home located at 11601 S.W. 9th Court in Pembroke Pines, Florida. There, the agents met Julio Artires, who rented the home. The following day, agents seized items such as an air handler, fluorescent lights, a cooler, and a digital scale from the residence.

Approximately nine months later, on April 6, 2001, the agents searched 3129 N.W. 13th Avenue, Miami, Florida after receiving a tip from an industrial gas vendor. There, the agents found a plastic tray filled with 17 bags of processed marijuana, unused rock wool, PVC piping, ceramic grow rocks, and a scale. In one of the bathrooms of the residence, holes had been drilled into the ceiling and the window was sealed with Mylar film and duct tape. That day agents also searched 1285-87 N.W. 28th Street, Miami, Florida, where they again found marijuana cultivation paraphernalia.

Five months later, on September 26, 2001, the agents searched 8600 N.W. 30th Road, Miami, Florida. At this residence, the agents met Valdes. In a small apartment at the rear of the residence, the agents found a fully-functioning grow house with 117 marijuana plants. Approximately three surveillance cameras were

7

mounted on the roof of the small apartment. The wires for this surveillance system ran from the apartment into the main residence. The agents recovered fingerprints that matched Mercado's fingerprints from the Mylar film found in the apartment. According to the electricity records, Valdes was the subscriber for both the apartment and the main residence.

On October 17 and 18, 2001, agents searched 15601 N.W. 39th Court, Opa Locka, Florida, an address for which Alberto Artires was listed as the subscriber on the electricity records. Alberto Artires consented to the search. There, agents found marijuana cultivation paraphernalia, several nursery trays with marijuana leaves in them, and small amounts of marijuana residue.

In addition to the physical evidence and testimony of the agents, government witnesses including co-conspirators Manual Horta, Espinosa, Aldao, and Hernando Hernandez testified against appellants at trial. The government's key witness was Espinosa, who pled guilty prior to trial. He testified that within a year of moving to Florida from Cuba, he began assisting with marijuana cultivation. Initially, Espinosa and others, including indicted co-conspirators Alberto, Mario, and Reynaldo Artires, would assist Hernandez, an unindicted co-conspirator, maintain grow houses and clip marijuana plants, including 33 plants grown at 1600 N.W. 28th Avenue in Miami, Florida.

8

Espinosa also testified that since moving to Florida, he has lived in four houses with Suarez. With the help of Mercado and Alberto, Mario, and Reynaldo Artires, Suarez and Espinosa grew crops of approximately 40 to 44 marijuana plants at one house. At another house, Suarez, Mercado, and Espinosa grew three crops of 30 marijuana plants, which they dried and clipped with the help of Alberto, Mario, and Reynaldo Artires. Espinosa testified that he, Suarez, Mercado, and Alberto and Julio Artires also grew, dried, and clipped two crops of 50-55 marijuana plants at a grow house in Carol City, Florida.

Espinosa testified that he and Aldao, who also pled guilty prior to trial, grew three crops of approximately 48 marijuana plants at 2968 N.W. 87th Terrace in Miami. While Espinosa held the title to the residence, Aldao lived there and maintained the plants with the help of Espinosa, Mercado, Alberto Artires, and Suarez. Espinosa also owned 15604 N.W. 37th Avenue, where he harvested one crop of 40 marijuana plants with the help of Alberto Artires, Mercado, Suarez, and Rey. Espinosa was in the process of growing a second crop of 40 plants plus cultivating seedlings when he was arrested. Espinosa also testified that he helped Alberto Artires cultivate a crop of 48 marijuana plants at Artires's home near the airport in Opa Locka.

Espinosa testified that he and Mercado set up a grow house for Valdes in an

efficiency apartment adjoining a rear bedroom of Valdes's house located at 8600 N.W. 30th Road while Valdes watched. With seedlings provided by Aldao, Valdes proceeded to grow two crops of marijuana plants, 53 and 50 plants respectively. These crops were clipped by Espinosa, Alberto Artires, Mercado, Valdes, Suarez, and others.

Aldao testified that he, like Espinosa, emigrated to Florida from Cuba. After working in various jobs, Aldao started cultivating marijuana crops with Mercado and Espinosa. Mercado, Espinosa, and Aldao grew a crop of over 90 plants at Aldao's house. At the time of Aldao's arrest, he was drying his second crop of 96 marijuana plants at 2968 N.W. 87th Terrace in Miami.

Hernandez, an unindicted co-conspirator, testified that he too moved to Florida from Cuba. After being introduced to Suarez, Hernandez and Suarez set up many grow houses together. Each grow house had its own separate caretaker. Hernandez testified that Alberto Artires may have assisted Suarez and him with clipping marijuana plants, and that Alberto Artires and his brothers provided him with marijuana to sell.

FBI Intelligence Research Specialist Maureen Hollinger testified that hundreds of calls had been made between the telephone numbers of Garcia, Alberto Artires, Mercado, and other co-conspirators. The analyst did not testify

that any calls had been made to or from Valdes. She also testified as to the ownership of the various residences investigated and searched by the agents. She testified that, from January 1997 through October 2001 (the span of the conspiracy) the following individuals were the title owners of the following properties: Espinosa owned 15604 N.W. 37th Avenue, Opa Locka, and 2968 N.W. 87th Terrace, Miami; Suarez owned 8504 Sheraton Drive, Miramar, and 3092 N.W. 15th Street, Miami; Mario Artires owned 8545 Long Acre Drive, Miramar; and Albert Artires owned 15601 N.W. 39th Court, Opa Locka.

## II.    PROCEDURAL BACKGROUND

On August 31, 2001, a federal grand jury in the Southern District of Florida, Miami Division, returned a sealed indictment charging nine defendants, including Garcia, with various marijuana manufacturing and distribution offenses. On December 14, 2001, the grand jury returned a superseding indictment adding Alberto Artires, Mercado, and Valdes as defendants. Count I charged all the defendants but Espinosa with conspiring to manufacture and possess with intent to distribute 100 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846(b)(1)(B). The superseding indictment alleged that the conspiracy existed from January 1997 through October 18, 2001.

In addition to the conspiracy charge, Garcia and Artires were charged in

Counts 10 and 20, respectively, with knowingly and intentionally manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2. Valdes and Mercado were similarly charged in Count 18, which specified that they manufactured 100 or more marijuana plants. Garcia was charged in Count 11 with knowingly and intentionally maintaining a residence located at 1165 W. 33rd Street, Hialeah, Florida for the purpose of manufacturing marijuana in violation of 21 U.S.C. §§ 856(a)(1) and 18 U.S.C. § 2. Valdes and Mercado were charged in Count 19 with knowingly and intentionally maintaining a residence located at 8600 N.W. 30th Road, Miami, Florida for the purpose of manufacturing marijuana in violation of 21 U.S.C. §§ 856(a)(1) and 18 U.S.C. § 2. Artires was similarly charged in Count 21 with knowingly and intentionally maintaining a residence located at 15601 N.W. 39th Court, Opa Locka, Florida for the purpose of manufacturing marijuana in violation of 21 U.S.C. §§ 856(a)(1) and 18 U.S.C. § 2.

Beginning September 23, 2002, appellants and two other co-defendants were tried together before a jury.[5] None of the appellants testified at trial. On October 11, 2002, the jury began its deliberations. Ultimately, the jury found appellants guilty as follows: Garcia guilty of conspiracy (Count 1) and maintaining 1165 W. 33rd Street, Hialeah, Florida, for the purpose of manufacturing marijuana (Count

---

[5]The jury acquitted co-defendant Julio Artires. Co-defendant Suarez was found guilty on all counts charged against him, but did not appeal his conviction or sentence.

11); Valdes guilty of conspiracy (Count 1), manufacturing 100 or more marijuana plants (Count 18), and maintaining 8600 N.W. 30th Road, Miami, Florida, for the purpose of manufacturing marijuana (Count 19); Artires guilty of conspiracy (Count 1), maintaining marijuana (Count 20), and maintaining 15601 N.W. 39th Court, Opa Locka, Florida, for the purpose of manufacturing marijuana (Count 21); and Mercado guilty of conspiracy (Count 1).[6] Appellants were sentenced on February 7, 2003, and are currently incarcerated.

## III. DISCUSSION

### A. Sufficiency of the Evidence

Appellants contend that, because the evidence was insufficient for a reasonable jury to convict them, the district court erred in denying their motions for judgment of acquittal filed pursuant to Rule 29 of the Federal Rules of Criminal Procedure. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government. *United States v. Starrett*, 55 F.3d 1525, 1541 (11th Cir. 1995). We must affirm the appellants' convictions unless, under no reasonable construction of the evidence, could the jury have found the appellants guilty beyond a reasonable doubt. *United States v. Camargo-*

---

[6]The jury acquitted Garcia of the charges in Count 10, acquitted Mercado of the charges in Counts 18 and 19, and acquitted Julio Artires on all counts. Suarez was found guilty on all counts charging him, but is not a party to this appeal.

13

*Vergara*, 57 F.3d 993, 997 (11th Cir. 1995). All reasonable inferences and credibility choices must be made in favor of the government and the jury's verdict. *United States v. Massey*, 89 F.3d 1433, 1438 (11th Cir. 1996).

### 1. Challenges to Conspiracy Count

After a twelve day trial, the jury found the appellants guilty of participating in a conspiracy to manufacture and possess with the intent to distribute marijuana, in violation of 21 U.S.C. § 846. Appellants argue that there was insufficient evidence of a conspiracy and no evidence that each of the defendants intended to participate in a conspiracy. "To support a conspiracy conviction, the government must prove (1) an agreement between the defendant and one or more persons, (2) the object of which is to do either an unlawful act or a lawful act by unlawful means." *United States v. Smith*, 289 F.3d 696, 706 (11th Cir. 2002) (citation and internal quotations omitted).

To prove participation in a conspiracy, the government must have proven beyond a reasonable doubt, even if only by circumstantial evidence, that a conspiracy existed and that the defendant knowingly and voluntarily joined the conspiracy. *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002), *cert. denied*, 539 U.S. 933 (2003). Thus, at issue is whether there was sufficient evidence for the jury to find that the appellants knowingly volunteered to join the

14

conspiracy to sustain their conviction as to Count 1.[7]  To satisfy this burden, the

government need not prove that the defendants knew all of the detail or

participated in every aspect of the conspiracy.  *Id.* at 1284.  Rather, the government

must only prove that the defendants "knew the essential nature of the conspiracy."

*Id.*

Whether the appellants knowingly volunteered to join the conspiracy may be

proven by "direct or circumstantial evidence, including inferences from the

conduct of the alleged participants or from circumstantial evidence of a scheme."

*United States v. Rodriguez*, 765 F.2d 1546, 1551 (11th Cir. 1985) (citation and

internal quotations omitted).  "Indeed, because the crime of conspiracy is

predominantly mental in composition, it is frequently necessary to resort to

circumstantial evidence to prove its elements."  *United States v. Pineiro*, 389 F.3d

1359, 1369 (11th Cir. 2004) (citation and internal quotations omitted).

Appellants challenge the trial testimony of co-conspirators Espinosa and

Aldao as incredible, untrustworthy, and uncorroborated.  Nevertheless,

uncorroborated testimony of an accomplice may be enough to support a conviction

---

[7]Although Alberto Artires did not explicitly challenge the sufficiency of the evidence in his brief, he adopted by reference the relevant portions of his co-appellants' briefs pursuant to Rule 28(i) of the Federal Rules of Appellate Procedure.  Because the other three appellants challenged their conspiracy convictions, we have also addressed whether there was sufficient evidence for the jury to convict Alberto Artires of conspiracy.

if the testimony is not on its face incredible or otherwise insubstantial. *United States v. Butler*, 792 F.2d 1528, 1536 (11th Cir. 1986). Because credibility determinations are the exclusive province of the fact finder, we cannot disregard the jury's credibility determination unless it is "unbelievable on its face." *United States v. Rivera*, 775 F.2d 1559, 1561 (11th Cir. 1985).

In addition to the testimony of Espinosa and Aldao, the government offered the testimony of other witnesses, including fact witnesses and government agents. The government also offered telephone records and electrical company subscriber records. This evidence coupled with an abundance of physical evidence, including photographs of marijuana plants and cultivation paraphernalia, clearly indicate a marijuana cultivation network. Based on the evidence offered at trial, a reasonable jury easily could have found a conspiracy to manufacture marijuana. "Once the existence of a conspiracy is established, only slight evidence is necessary to connect a particular defendant to the conspiracy." *United States v. Clavis*, 956 F.2d 1079, 1085 (11th Cir. 1992). Because there was sufficient evidence connecting Garcia, Valdes, Alberto Artires, and Mercado to the conspiracy, their convictions as to Count 1 should be sustained.

        2.     Challenges to Substantive Counts

                a.     Challenge to Conviction for Knowingly Manufacturing Marijuana with Intent to Distribute

16

Valdes argues that there was insufficient evidence for a reasonable jury to convict him of knowingly manufacturing marijuana. Section 841(a)(1) of Title 21 requires direct or circumstantial proof of the individual's knowledge and intent. *United States v. Poole*, 878 F.2d 1389, 1391 (11th Cir. 1989).

Valdes resided in a house located at 8600 N.W. 30th Road, Miami. Since October of 1999, he was the individual listed as the subscriber on the electrical records for both the main residence and an efficiency apartment adjacent to the main residence. Upon searching the efficiency apartment, agents discovered 117 marijuana plants and a fully-functioning grow house. Accordingly, there was sufficient evidence for a reasonable jury to find that Valdes knowingly manufactured 117 marijuana plants with the intent to distribute the marijuana narcotic.[8]

> b. Challenges to Convictions for Knowingly Maintaining a Place for the Purpose of Manufacturing Marijuana

To convict under 21 U.S.C. § 856(a)(1), the government must prove "that the defendant: (1) knowingly, (2) operated or maintained a place, (3) for the purpose of manufacturing, distributing, or using any controlled substance." *Pineiro*, 389 F.3d at 1367 (citation and internal quotations omitted). "Thus, the

---

[8]Alberto Artires was also convicted of knowingly manufacturing marijuana. He did not raise a sufficiency of evidence claim as to this conviction on appeal. Had he raised such a claim, we would have rejected it.

offense requires two mental elements, knowledge and purpose." *Id.* Garcia and Valdes both challenge the sufficiency of the evidence for their convictions under § 856(a)(1).

Garcia rented the home located at 1165 West 53rd Street, Hialeah, Florida, from Reynaldo Artires. Adjoining the home was an efficiency apartment that agents later discovered had been used as a grow house. After a trained police canine alerted the agents to the scent of controlled substances in the apartment and a white van located on the property, the agents obtained a search warrant. Upon searching the efficiency apartment, the agents discovered marijuana cultivation paraphernalia, including irrigation hoses, five-gallon buckets, sealed windows, patches of Mylar film on the walls, and marijuana residue. Nevertheless, Garcia challenges this conviction by asserting that the government did not offer evidence that placed Garcia physically in the efficiency apartment.

Two finger prints found on the patches of Mylar film in the apartment matched Garcia's fingerprints. Moreover, in the white van, which was registered to Garcia, the agents found more marijuana cultivation materials. Additionally, Espinosa testified that Garcia had assisted in clipping marijuana plants during the conspiracy. FBI Specialist Hollinger also testified that numerous phone calls were made between the phone numbers of Garcia, Mario Artires, Reynaldo Artires, and

18

another unindicted co-conspirator who operated a grow house in Carroll City, Florida. From the totality of this evidence, it was reasonable for the jury to find that Garcia knowingly maintained the efficiency apartment as a place for growing marijuana.

At trial, the government offered evidence that agents discovered 117 marijuana plants and a fully-functioning grow house in an efficiency apartment adjacent to Valdes's home located at 8600 N.W. 30th Road in Miami. Although Valdes contends that the government offered no evidence placing him physically in the efficiency apartment, he was listed as the subscriber on the electricity records for both the main residence and the efficiency apartment. Moreover, the wires from the surveillance system monitoring the apartment ran into the main residence.

Therefore, considering the evidence, a reasonable jury could also find Valdes guilty of knowingly maintaining a place for the purpose of manufacturing marijuana. Accordingly, Garcia's and Valdes's challenges to their convictions for knowingly maintaining a place for the purpose of manufacturing marijuana fail.[9]

B.      Evidentiary Issues

Valdes contends that the district court erred in admitting evidence that did

---

[9]Again, Alberto Artires did not raise a sufficiency of the evidence claim as to his conviction for knowingly maintaining a place for the purpose of manufacturing marijuana. We would have also rejected such a claim if he had raised that argument on appeal.

19

not pertain to him, even though the evidence did support the charges brought against his co-defendants. The government asserts that Valdes's challenge of the evidentiary rulings is actually a thinly-disguised severance argument. At no point during the evidentiary objections did Valdes move the district court for a severance, and, therefore, the issue of whether Valdes should have had a separate trial because of this evidence is not before us.

Valdes specifically argues that the evidence should have been excluded as irrelevant and highly prejudicial. While Valdes claims that he was prejudiced by the admission of evidence of his co-defendants' unlawful acts, we have long recognized that a defendant does not suffer compelling prejudice simply because much of the evidence admitted at trial is applicable only to co-defendants. *United States v. Cassano*, 132 F.3d 646, 651 (11th Cir. 1998). The general rule, particularly applicable in conspiracy cases, is that defendants indicted together should be tried together. *Id*.

Although the photographs, agency paperwork, and records to which Valdes objected may not have been relevant to the charges brought against him, this evidence was clearly relevant to the charges brought against his co-defendants. Further, the district court explicitly instructed the jury that each charge and the evidence pertaining to that charge had to be considered separately. The acquittal of

20

Julio Artires on all charges and of Garcia and Mercado on certain charges indicates that the jury followed the court's instructions and made individualized determinations of guilt. Accordingly, we hold that the district court did not abuse its discretion in admitting this evidence over Valdes's objection.

C.     Mistrial or, in the Alternative, Severance

Garcia argues that the district court erred in denying the appellants' motion for mistrial or, alternatively, severance due to prejudicial remarks made by counsel for Valdes during his closing argument.[10] We review motions for mistrial and motions for severance for abuse of discretion. *Starrett*, 55 F.3d at 1553. Garcia contends that he and his co-defendants were prejudiced by a remark made by counsel for Valdes in his closing argument. In his closing argument, counsel for Valdes stated: "The government was right. This [telephone] chart tells you all you need to know . . . It tells you everything you need to know about this conspiracy." Trial Tr. at p. 1431. Notably, the district court instructed the jury before closing arguments began that the arguments of counsel were not evidence, and later reminded the jury that such comments were not evidence.

For an alleged improper closing argument to justify a new trial, the argument "must be both improper and prejudicial to a substantial right of the defendant."

---

[10]At trial, Julio Artires moved the court for a mistrial or, in the alternative, a severance, and Garcia, Mercado, Alberto Artires, and Suarez joined in the motion.

*Rodriguez*, 765 F.2d at 1559. When a curative instruction is given, this court reverses only if the evidence "is so highly prejudicial as to be incurable by the trial court's admonition." *United States v. Perez*, 30 F.3d 1407, 1410 (11th Cir. 1994).

"[T]o compel severance, the defenses of co-defendants must be more than merely antagonistic, they 'must be antagonistic to the point of being mutually exclusive.'" *United States v. Knowles*, 66 F.3d 1146, 1159 (11th Cir, 1995). A district court should grant a motion for severance only if (1) there exists a "serious risk that a joint trial would compromise a specific trial right of one of the defendants," or (2) a joint trial would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Notably, a district court's limiting instructions "often will suffice to cure any risk of prejudice." *Id.*

At issue is whether the comments made by Valdes's attorney were prejudicial to the point of compromising the rights of Valdes's co-defendants. Having reviewed the record, we do not find that the comments were so highly prejudicial that the district court's instructions to the jury regarding closing arguments did not cure any prejudice. Further, Alberto Artires, Garcia, and Mercado have not demonstrated that the defense of Valdes was antagonistic to the point of being mutually exclusive of their defenses. Considering the substantial

22

evidence of all of the appellants' involvement in the conspiracy, the comments did not prevent the jury from making a reliable judgment regarding guilt or innocence, and Alberto Artires, Garcia, and Mercado did not suffer compelling prejudice. Thus, we affirm the district court's denial of the motion for mistrial or severance.

D.    Jury Instruction for Accessory After the Fact

Garcia proposed that the jury be instructed on accessory after the fact because such an instruction was allegedly supported by the evidence adduced at trial. Specifically, Garcia requested the following jury instruction:

> Accessory after the Fact
>
> Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial, or punishment, is an accessory after the fact.
>
> If you first find that there is a reasonable doubt as to whether Jose Rolando Garcia committed the substantive offenses charged in Counts 10 and 11 but you find beyond a reasonable doubt that Mr. Garcia is an accessory after the fact, you must find him not guilty of Counts 10 and 11.

Garcia argued that the telephone records offered into evidence by the government showed that Garcia was following the instructions of Reynaldo Artires to dismantle the grow house. Therefore, Garcia asserted his involvement in the conspiracy commenced after the completion of the charged crimes. The government responded that Garcia, in fact, dismantled the grow house to conceal his own crime.

In denying Garcia's request for an accessory after the fact instruction, the district court stated that the requested instruction would confuse the jury. Additionally, the district court noted that the instructions for the substantive offenses correctly described the elements for those crimes, and Garcia could argue that evidence that he dismantled a grow house did not necessarily prove that he manufactured or maintained a place for manufacturing marijuana.

We review a district court's rejection of a proposed jury instruction for an abuse of discretion. *Starrett*, 55 F.3d at 1551. The district court has broad discretion in formulating jury instructions as long as those instructions are a correct statement of the law. *United States v. Schlei*, 122 F.3d 944, 968 (11th Cir. 1997). "The district court's refusal to incorporate a requested jury instruction will be reversed only if the proffered instruction was substantially correct, the requested instruction was not addressed in charges actually given, and failure to give the instruction seriously impaired the defendant's ability to present an effective defense." *Starrett*, 55 F.3d at 1551 (citation and internal quotations omitted).

The government does not dispute that the proffered jury instruction was a substantially correct statement of the law. Although the instructions given to the jury did not include the requested instruction on accessory after the fact, Garcia has not demonstrated that the district court's failure to give the requested instruction

seriously impaired Garcia's ability to present an effective defense. As the district court noted, the omission of the requested instruction did not prevent Garcia from arguing that evidence that he had dismantled a grow house did not prove that he had manufactured marijuana or maintained a grow house. Therefore, we do not find that the district court's omission of this proposed jury instruction constitutes an abuse of its discretion, and affirm the district court's denial of Garcia's request.

E.    Valdes's Safety-Valve Request

Valdes appeals the district court's denial of his safety-valve request pursuant to U.S.S.G. § 5C1.2. We review the district court's application of the federal sentencing guidelines to uncontroverted facts *de novo*. *United States v. Clavijo*, 165 F.3d 1341, 1343 (11th Cir. 1999).

The safety-valve provision outlines five criteria that, if met, enable the district court to sentence a defendant without regard to the mandatory minimum sentences in certain cases. U.S.S.G. § 5C1.2; *United States v. Brownlee*, 204 F.3d 1302, 1304 (11th Cir. 2000). It is undisputed that Valdes meets the first four criteria of the safety-valve provision and that the information he provided was truthful. Therefore, at issue, is whether Valdes has satisfied the temporal requirement outlined in U.S.S.G. § 5C1.2(a)(5). Sub-section (a)(5) provides, in part: "*not later than the time of the sentencing hearing*, the defendant has truthfully

provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(5) (emphasis added). At sentencing, when it became apparent to Valdes that he had not completely debriefed to the satisfaction of the government, he moved for a continuance of the sentencing. The court declined his request for a continuance, and, ultimately, declined to give him safety-valve relief due to his failure to completely debrief prior to the commencement of sentencing.

The government argues that our language in *Brownlee* created a rigid jurisdictional rule that precludes a finding that Valdes satisfied the temporal requirement in U.S.S.G. § 5C1.2(a)(5). In *Brownlee*, we held that even if a defendant previously lied or withheld information from the government, the district court is not later precluded from granting safety-valve relief. *Brownlee*, 204 F.3d at 1304. We stated that "lies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer *not later than the commencement of the sentencing hearing*." *Brownlee*, 204 F.3d at 1305 (emphasis added). The government reads the end of this statement in *Brownlee* as unequivocally requiring that the defendant's safety-valve proffer be completed prior to the commencement of the sentencing hearing.

26

We disagree. Since Brownlee made his proffer prior to the commencement of his sentencing, the temporal issue was not before us in that case. Therefore, the temporal language in the latter part of that statement was not part of the holding, and, as dicta, does not have the force of law. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1315 (11th Cir. 1998) (Carnes, J., concurring) ("[D]icta in our opinions is not binding on anyone for any purpose.").

Unlike the factual circumstances in *Brownlee*, in the instant case, Valdes's opportunity for safety-valve relief hinges upon our interpretation of the temporal requirement in U.S.S.G. § 5C1.2(a)(5). Sub-section (a)(5) specifically requires that the proffer be made "not later than the *time* of sentencing." U.S.S.G. § 5C1.2(a)(5) (emphasis added). Notably, this temporal requirement does not preclude the district court from exercising its discretion to continue a sentence. *See United States v. Madrigal*, 327 F.3d 738, 739 (8th Cir. 2003). If the district court finds that the factual circumstances warrant a continuance, then it may continue the sentencing hearing to give the defendant more time to fully debrief and give a formal safety-valve statement. Here, the district court interpreted our language in *Brownlee* as trumping its discretion to continue the sentencing hearing to allow Valdes to more fully debrief.

"Of course, in the most typical cases the qualification for the safety valve

27

should come before the commencement of the sentencing hearing in order to prevent the defendant from misleading the government or manipulating the sentence." *Madrigal*, 327 F.3d at 745. Nevertheless, we believe that Valdes's circumstances warranted a continuance. First, Valdes, a first time drug offender, does not speak English, and all translation at the initial debriefing was performed by an agent rather than an independent translator. Second, his counsel erroneously believed that Valdes had already made a sufficient statement to qualify for the safety-valve and that he had been assured by the government agents that they would follow-up with additional debriefings. Third, and perhaps most importantly, there is no evidence that Valdes's failure to fully debrief prior to the commencement of the sentencing hearing was an attempt to mislead, manipulate, stall or delay. Like Madrigal, Valdes's failure to fully disclose prior to the commencement of the sentencing hearing was due to a misunderstanding and not in blatant disregard for the requirements of U.S.S.G. § 5C1.2. Therefore, considering the facts of this case, the district court had good cause to continue Valdes's sentencing.

We hold that a district court may continue a sentencing hearing to give a defendant an opportunity to debrief for the purpose of considering safety-valve relief, if the district court determines that the factual circumstances warrant a

continuance. In light of this conclusion, we remand to the district court for consideration of Valdes's safety-valve request.

F.   Amount of Plants Attributable to Alberto Artires

Alberto Artires appeals the district court's factual determination at sentencing that he was responsible for 312 marijuana plants when the jury specifically found in a special interrogatory verdict that he was not responsible for more than 100 marijuana plants. The district court's factual finding was based on evidence presented at trial and proven to the court's satisfaction by a preponderance of the evidence at the sentencing.

Alberto Artires has adequately preserved this claim. He clearly raised this *Apprendi*-type constitutional claim in his objections to the Pre-sentence Investigation Report and at sentencing. He then raised this constitutional claim again in his initial brief, and, in his supplemental brief, he specifically challenged this factual finding by the district court in light of *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). At no point has the government argued that either plain error or harmless error review should apply to this claims. In fact, at oral argument, the government conceded that if the Supreme Court's decision in *Booker* was consistent with its *Blakely* decision, then Artires's *Apprendi*-type constitutional arguments are valid.

29

In *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, ___ L. Ed. 2d ___ (2005), the Supreme Court held that the Sixth Amendment as construed in *Blakely v. Washington*, ___ U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004)*,* applies to the federal sentencing guidelines, and, consequently, held that the federal sentencing guidelines are effectively advisory. This constitutional holding "means that it is no longer possible to maintain the judicial factfinding that Congress thought would underpin the mandatory Guidelines system that it sought to create." *Booker*, 125 S. Ct. at 757 (Breyer, J.). As in *Booker*, the district court in this case "applied the Guidelines as written and imposed a sentence higher than the maximum authorized solely by the jury's verdict." *Booker*, 125 S. Ct. at 769 (Breyer, J.). Therefore, like Booker's sentence, Alberto Artires' sentence violates the Sixth Amendment. Consistent with the Supreme Court's remand in *Booker*, we vacate the judgment of Alberto Artires and remand for resentencing. *See, e.g., United States v. Reese*, 397 F.3d 1337, 1338 (11th Cir. 2005) (remanding a preserved error in light of *Booker*).

## IV.    CONCLUSION

We affirm the district court's judgment in all respects except the denial of Valdes's safety-valve request and the calculation of Alberto Artires's sentence. Therefore, we vacate the judgments of Valdes and Alberto Artires and remand for

resentencing consistent with this opinion.


AFFIRMED in part, and VACATED and REMANDED in part.