# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2871

_____

United States of America,          *
                                   *
    Plaintiff - Appellee,          *
                                   *   Appeal from the United States
v.                                 *   District Court for the
                                   *   Eastern District of Arkansas.
Louis F. Pirani,                   *
                                   *
    Defendant - Appellant.          *

_____

Submitted:  March 9, 2005
     Filed:  April 29, 2005 (Corrected: 05/09/05)

_____

Before LOKEN, Chief Judge, HEANEY, WOLLMAN, MORRIS SHEPPARD
    ARNOLD, MURPHY, BYE, RILEY, MELLOY, SMITH, COLLOTON,
    GRUENDER and BENTON, Circuit Judges, en banc.

_____

LOKEN, Chief Judge.


    In this case, we apply the Supreme Court's recent decision in United States v. Booker, 543 U.S. --, 125 S. Ct. 738 (2005), to a sentencing error that defendant Louis F. Pirani failed to preserve in the district court. Having carefully considered the divergent analyses of our sister circuits, we follow decisions of the First, Fifth, and

Eleventh circuits[1] in holding that a remand for resentencing is not required unless the defendant meets his burden to demonstrate plain error prejudice under controlling Supreme Court precedents, that is, a "reasonable probability" that the district court would have imposed a more favorable sentence under the advisory sentencing guidelines regime mandated by Booker. As Pirani has not met that burden, we affirm.

## I. Background

During a federal investigation into allegations that Crittenden County deputy sheriffs were stealing money seized at drug interdiction points, FBI and IRS agents interviewed former deputy Louis F. Pirani. Pirani denied an ownership interest in a ski boat and an airplane, assets the investigators doubted he could afford based on his legitimate sources of income. When the investigation uncovered documentary evidence that Pirani had an interest in both crafts, he was charged with two counts of making materially false statements to federal investigators in violation of 18 U.S.C. § 1001(a). After a trial, the jury convicted him of both counts.

At sentencing, the district court[2] applied the then-mandatory United States Sentencing Guidelines, using the November 1, 2000, Guidelines in effect when Pirani's offenses were committed. Pirani argued that his total offense level should be 6, the base offense level under U.S.S.G. § 2F1.1 (2000), which governed most § 1001 fraud convictions. The court found, however, that upward adjustments for the amount of loss ($114,000), more than minimal planning, and obstruction of justice would increase the total offense level under § 2F1.1 to16, producing a guidelines

---

[1]United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005); United States v. Mares, 402 F.3d 511(5th Cir. 2005); United States v. Rodriguez, 398 F.3d 1291 (11th Cir. 2005).

[2]The HONORABLE SUSAN WEBBER WRIGHT, Chief Judge, United States District Court for the Eastern District of Arkansas.

sentencing range of 21 to 27 months in prison, a range the court considered "too high" for Pirani's offenses. The court further found that "defendant's conduct as established at trial, which consisted of giving false statements to agents of the FBI and IRS knowing that they were conducting an investigation," established a violation of 18 U.S.C. § 1505. Application note 14 to § 2F1.1 stated, "Where the indictment or information setting forth the count of conviction . . . establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1." The court invoked this cross reference and assessed Pirani a total offense level of 12 under U.S.S.G. § 2J1.2 (2000), the obstruction of justice provision governing violations of 18 U.S.C. § 1505. That produced a guidelines sentencing range of 10 to 16 months in prison. The court imposed a ten-month sentence and "split" the sentence into five months in prison and five months home detention. See U.S.S.G. § 5C1.1 (2000).

Pirani appealed his conviction and sentence, arguing the district court committed evidentiary errors at trial and erred in applying § 2J1.2 to determine his offense level under the mandatory Guidelines. After oral argument to a panel of this court, the Supreme Court issued its decision in Blakely v. Washington, 124 S. Ct. 2531 (2004). Pirani moved to remand his case for re-sentencing, arguing that the district court violated his Sixth Amendment rights under Blakely by finding that his conduct as charged and proved at trial satisfied the elements of obstruction of justice. The panel affirmed Pirani's conviction but concluded that use of the § 2F1.1 cross-reference violated his Sixth Amendment right to trial by jury and was plain error requiring a remand for resentencing. The en banc court vacated the panel's opinion and granted rehearing en banc. After the Supreme Court issued its decision in Booker, we requested supplemental briefing on the issue "whether the district court committed sentencing error in light of [Booker], and if so, whether it is plain error warranting relief under . . . United States v. Olano, 507 U.S. 725, 732-37 (1993)."

## II. Sentencing Issues

In <u>Booker</u>, the Supreme Court applied the core Sixth Amendment principle of <u>Blakely</u> to enhancements imposed under the mandatory federal Sentencing Guidelines -- "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 125 S. Ct. at 756. Then, invoking its power to sever provisions that render a statute unconstitutional, the Court "severed and excised" two provisions of the Sentencing Reform Act of 1984: 18 U.S.C. § 3553(b)(1), the provision that made the Guidelines mandatory; and 18 U.S.C. § 3742(e), the provision establishing standards of appellate review which, as revised in 2003, "make Guidelines sentencing even more mandatory than it had been." 125 S. Ct. at 765. The effect of this remedy (assuming no responsive legislation by Congress) is an advisory Guidelines system in which sentencing judges continue to "take account of the Guidelines together with [the] other sentencing goals" enumerated in 18 U.S.C. § 3553(a), and courts of appeal review sentences for "unreasonableness." 125 S. Ct. at 764-66.

The advisory Guidelines mandated by <u>Booker</u> apply to all federal sentencings, whether or not the defendant is subject to one of the enhancements that triggered the Sixth Amendment issues that invalidated the mandatory Guidelines regime. The Court in <u>Booker</u> confirmed that this profound change in federal sentencing applies to all cases now on direct appeal. In determining how these diverse cases should be resolved, the Court provided significant guidance to the courts of appeals:

> [The fact that this new rule applies to cases pending on direct review] does not mean that we believe that every sentence gives rise to a *Sixth Amendment* violation. Nor do we believe that every appeal will lead to a new sentencing hearing. That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error"

test. It is also because, in cases not involving a *Sixth Amendment* violation, whether resentencing is warranted or whether it will instead be sufficient to review a sentence for unreasonableness may depend upon application of the harmless-error doctrine.

125 S. Ct. at 769. Before turning to the question of plain error, we must consider two preliminary issues raised by Pirani -- whether the district court misapplied the then-mandatory Guidelines, an issue that is still important because the statute as excised by <u>Booker</u> "requires judges to take account of the Guidelines together with other sentencing goals," 125 S. Ct. at 764; and whether Pirani preserved the issue of <u>Booker</u> error in the district court, so that the plain error doctrine does not apply.

**A.**

Pirani argues that the district court misapplied the cross reference in U.S.S.G. § 2F1.1(2000) because, while his conduct as proved at trial might have constituted a violation of 18 U.S.C. § 1505, the indictment did not establish that his offense was more aptly covered by U.S.S.G. § 2J1.2, as application note 14 required. Like the district court, we disagree. The two counts in question did not expressly allege obstruction of justice or a violation of § 1505. But the facts alleged, including those incorporated from a prior count, charged Pirani with making false statements to FBI and IRS agents during the course of a government investigation at a time when Pirani, himself in law enforcement, knew of the investigation. In these circumstances, the district court did not clearly err in finding that the indictment established an offense more aptly covered by another guideline, invoking the cross reference in § 2F1.1, and sentencing Pirani in accordance with § 2J1.2. <u>Accord</u> <u>United States v. Kurtz</u>, 237 F.3d 154 (2d Cir. 2001).

**B.**

An error by the trial court, even one affecting a constitutional right, is forfeited -- that is, not preserved for appeal -- "by the failure to make timely assertion of the right." United States v. Olano, 507 U.S. 725, 731 (1993). To preserve an error for appellate review, an objection must be timely and must "clearly stat[e] the grounds for the objection." United States v. Williams, 994 F.2d 1287, 1294 (8th Cir. 1993); Fed. R. Crim. P. 51(b). Errors not properly preserved are reviewed only for plain error under Rule 52(b) of the Federal Rules of Criminal Procedure, as construed in Olano and its progeny. The plain error principle applies even when, as here, the error results from a change in the law that occurred while the case was pending on appeal. See Johnson v. United States, 520 U.S. 461, 467-68 (1997).

Pirani argues that the plain error doctrine does not apply in this case because he preserved his Booker claim when he "raised numerous legal and factual objections in the district court to the Presentence Report, challenging the proposed application of various sentencing enhancements, including the cross reference." However, these objections did not allege Booker errors. Booker changed the legal significance of a Guidelines enhancement -- from mandatory to advisory -- not whether the facts of a particular case make the enhancement applicable. In this regard, we agree with the First Circuit: "The argument that a Booker error occurred is preserved if the defendant below argued Apprendi or Blakely error or that the Guidelines were unconstitutional." United States v. Antonakopoulos, 399 F.3d at 76; see United States v. Sayre, 400 F.3d.599, 602 (8th Cir. 2005) (Gruender, J., concurring).

In United States v. Coffey, 395 F.3d 856, 860-61 (8th Cir. 2005), reh'g en banc granted, Nos. 04-2176/2247 (Apr. 1, 2005), a panel of this court held that an objection at sentencing to the sufficiency of the government's evidence of drug quantity was sufficient to preserve a claim of Booker error on appeal. Other panels have followed this ruling. See United States v. Selwyn, 398 F.3d 1064, 1066-67 (8th

Cir. 2005); United States v. Sdoulam, 398 F.3d 981, 995 (8th Cir. 2005); United States v. Fox, 396 F.3d 1018, 1026-27 (8th Cir. 2005). These decisions are contrary to this court's unanimous en banc decision that a sufficiency-of-proof objection did not preserve a claim of Apprendi error. United States v. Diaz, 296 F.3d 680, 683 n.4 (8th Cir. 2002). To the extent these decisions are inconsistent with this opinion, they are not controlling precedent.[3]

Pirani further argues that he preserved his claim of Booker error at sentencing when his attorney stated, in arguing that the court should not impose a two-level enhancement for more than minimal planning, "when you talk about sending people to prison, I believe the burden of proof should be beyond a reasonable doubt." Many defendants have urged courts to adopt this strict standard of proof in applying the mandatory Guidelines. Because Pirani did not couple this statement with a specific reference to Apprendi or Blakely or the Sixth Amendment, he did not preserve the very different question of whether the district court committed Booker error in construing the Guidelines as mandatory when invoking the cross-reference to § 2J1.2. Thus, we review this question for plain error.

## C.

Plain error review is governed by the four-part test of Olano, 507 U.S. at 732-36, as articulated in Johnson, 520 U.S. at 466-67:

> before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

---

[3]We have granted the government's petition for rehearing en banc in Coffey.

The defendant has the burden of proving plain error, whereas the government has the burden of proving harmless error.  Olano, 507 U.S. at 734-35. "Appellate review under the plain-error doctrine, of course, is circumscribed and we exercise our power under Rule 52(b) sparingly." Jones v. United States, 527 U.S. 373, 389 (1999).

It is undisputed that the first two Olano factors are satisfied here.  The district court (understandably) committed Booker error by applying the Guidelines as mandatory, and the error is plain, that is, clear or obvious, at this time.  "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal -- it is enough that an error be 'plain' at the time of appellate consideration." Johnson, 520 U.S. at 468.  The crux of the inter-circuit conflict comes in the application of the third and fourth Olano factors -- whether the Booker error affected the defendant's "substantial rights" in a manner that "seriously affects the fairness, integrity, or public reputation of judicial proceedings."

**1.**

The Fourth Circuit in a thorough opinion concluded that all pending appeals in which the district court committed Sixth Amendment error by imposing a mandatory, judge-found guidelines enhancement must be remanded because of plain Booker error. United States v. Hughes, 401 F.3d 540 (4th Cir. 2005).  Noting that "the proper focus" of the plain error prejudice inquiry is on what happened at the original sentencing proceeding, not what might happen on remand, the court criticized contrary decisions in other circuits for considering the remedy mandated in Booker because that approach "would essentially require us to disregard the Sixth Amendment error altogether." Id. at 551.  Having defined the Booker error in this fashion, the court concluded that the defendant's rights were substantially affected if an enhancement increased the mandatory Guidelines sentence, and that satisfied the fourth Olano factor because the defendant was sentenced to a longer prison term than

"the maximum sentence authorized by the jury verdict." Id. at 555. The Sixth Circuit and the Ninth Circuit have adopted similar approaches to the plain error issue. See United States v. Oliver, 397 F.3d 369, 379-80 (6th Cir. 2005); United States v. Ameline, 400 F.3d 646, 654 (9th Cir. 2005), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Like most other circuits, we disagree with the Fourth Circuit's definition of the plain error at issue. The error in Booker was not merely the enhancement of a sentence on the basis of judge-found facts. The constitutional error arose from the combination of the enhancement and a mandatory Guidelines regime. In Booker, every Justice agreed that the Sixth Amendment would not be implicated "if the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts." 125 S. Ct. at 750 (Stevens, J., for the Court); accord 125 S. Ct. at 764 (Breyer, J., for the Court).

In deciding whether a defendant has satisfied the third Olano factor, we agree with the Fourth Circuit that the prejudice inquiry focuses on what sentence *would have been* imposed absent the error. But the error as defined in Booker can be excised in two different ways, either by limiting enhancements in a mandatory guidelines regime to those consistent with the jury verdict, or by retaining enhancements based upon judge-found facts but applying them in an advisory guidelines regime.[4] If the Court in Booker had not excised portions of the Sentencing Reform Act, the latter option would not be available. But the Court did modify the statute, meaning that the district court could have avoided Booker error by declaring the Guidelines advisory (contrary to the plain meaning of the statute at that time),

---

[4]Nothing in Booker suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime. See U.S.S.G. § 6A1.3, comment., prescribing the preponderance of the evidence standard; accord Mares, 402 F.3d at 519 & n.6.

determining the guidelines sentencing range in the manner we have now upheld, and then imposing a "reasonable" sentence. In these circumstances, we agree with the First, Second, Fifth, Seventh, and Eleventh Circuits that the third <u>Olano</u> factor turns on whether Pirani has demonstrated a reasonable probability that he would have received a more favorable sentence with the <u>Booker</u> error eliminated by making the Guidelines advisory.[5] As Judge Posner explained in <u>United States v. Paladino</u>, "what [<u>Hughes</u>] overlooked is that if the judge would have imposed the same sentence even if he had thought the guidelines merely advisory (in which event there would have been no Sixth Amendment violation), and the sentence would be lawful under the post-*Booker* regime, there is no prejudice to the defendant." 401 F.3d 471, 483 (7th Cir. 2005).

The Second Circuit has modified the prescribed plain error inquiry by remanding <u>Booker</u> plain error cases to the district courts to "consider, based on the circumstances at the time of the original sentence, *whether* to resentence, after considering the currently applicable statutory requirements as explicated in *Booker*." <u>United States v. Crosby</u>, 397 F.3d 103, 120 (2d Cir. 2005). The Seventh Circuit has adopted this approach, except that it retains jurisdiction until the district court "states on limited remand [whether] he would have imposed a different sentence had he known the guidelines were merely advisory." <u>Paladino</u>, 401 F.3d at 484.

Though creative, we conclude that this approach violates the Supreme Court's command in <u>Booker</u> that courts of appeals apply *"ordinary* prudential doctrines," including *"the* 'plain-error' test." 125 S. Ct. at 769 (emphasis added). Four times in recent years, a unanimous or nearly unanimous Supreme Court has applied *the* plain error test of <u>Olano</u> and concluded that an unpreserved error would not be reviewed

---

[5]<u>See</u> <u>Antonakopoulos</u>, 399 F.3d at 75; <u>United States v. Williams</u>, 399 F.3d 450, 459 & n.12 (2d Cir. 2005); <u>Mares</u>, 402 F.3d at 521; <u>United States v. Paladino</u>, 401 F.3d 471, 483-84 (7th Cir. 2005); <u>United States v. Rodriguez</u>, 398 F.3d 1291, 1299-1306 (11th Cir. 2005).

because it either did not affect substantial rights or did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. United States v. Benitez, 542 U.S. 74 (2004); United States v. Cotton, 535 U.S. 625 (2002) (Apprendi error); United States v. Vonn, 535 U.S. 55 (2002); Johnson v. United States, 520 U.S. 461, 467 (1997). The Court has repeatedly said that the "plain-error review is in the discretion of the reviewing court." Vonn, 535 U.S. at 63. In addition to violating this principle, delegating the plain error prejudice question to the district courts is contrary to the intent of Congress to reduce sentencing disparity by expanding appellate review. Thus, like the Fifth Circuit and the Eleventh Circuit, we reject the limited remand approach as contrary to our obligation as an appellate court to apply the third and fourth Olano factors based upon the existing record on appeal. See Mares, 402 F.3d at 522; Rodriguez, 398 F.3d at 1304-06.

The Supreme Court has instructed that proving plain error prejudice "should not be too easy" and "demand[s] strenuous exertion to get relief." Benitez, 542 U.S. at 2340. Accordingly, like the First, Fifth, and Eleventh circuits, we hold that, before we may consider whether to exercise our discretion under the fourth Olano factor to review a forfeited Booker error, the defendant must show a "reasonable probability," based on the appellate record as a whole, that but for the error he would have received a more favorable sentence.

**2.**

In addressing the third Olano factor, Pirani's supplemental brief and the amicus briefs submitted in his support simply argue that all cases in which the Booker error included a Sixth Amendment violation should be remanded under plain error review. We reject that contention because it misperceives the nature of Booker error. All sentences imposed by a district court that mistakenly (though understandably) believed the Guidelines to be mandatory contain Booker error. Whether the resulting sentence included what Pirani calls a Sixth Amendment violation, that is, an

-11-

enhancement based upon judge-found facts, may *affect* the plain error prejudice inquiry. But it does not, by itself, establish a reasonable probability that, but for Booker error, the defendant would have received a more favorable sentence under an advisory guidelines regime. That question is inherently more fact specific. See Antonakopoulos, 399 F.3d at 80-81.

Pirani's brief does not argue that the district court would have imposed a more favorable sentence under the advisory guidelines regime mandated by Booker. In any event, the record on appeal would not support this contention. The sentence imposed was at the bottom of the obstruction-of-justice guidelines range. But sentencing at the bottom of the range is the norm for many judges, so it is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the Booker error. Here, the district court applied the cross-reference to U.S.S.G. § 2J1.2, which avoided § 2F1.1 enhancements that would have produced a mandatory guidelines sentence the court considered "too high." The court then exercised its discretion to impose the minimum sentence, noting that "[t]here were factors that weighed against imposing the minimum sentence, but the Court believes that the minimum sentence is appropriate." The court further exercised its discretion in a manner favorable to Pirani by satisfying the ten-month sentence in part with home confinement.

Pirani was convicted of an offense reflecting a serious breach of duty by a public official sworn to uphold and enforce the law. Nothing in the record suggests a reasonable probability that the district court would have imposed a more lenient sentence absent Booker error.[6] In these circumstances, Pirani has not carried his

---

[6]During the lengthy sentencing hearing, the district court twice expressed her dislike of the Guidelines. But that is not surprising given the complexity of applying the Guidelines in this case. It would be relevant to plain error prejudice if the district court had opined that the sentence produced by the mandatory Guidelines was unreasonable. A court's dislike of the Guidelines in general is not relevant.

burden of demonstrating prejudicial plain error under Olano. As the Eleventh Circuit said in Rodriguez, "where the effect of the error on the result in the district court is uncertain or indeterminate -- where we would have to speculate -- the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." 398 F.3d at 1301.

Because Pirani has failed to establish a reasonable probability of prejudice, we need not consider the fourth Olano factor, whether to exercise our discretion to review a plain error because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Johnson, 520 U.S. at 467. In a number of cases, we have granted plain error review when the district court applied the wrong mandatory guidelines range because of clerical or other errors. See United States v. Warren, 361 F.3d 1055, 1059 (8th Cir. 2004); United States v. Weaver, 161 F.3d 528, 530 (8th Cir. 1998); United States v. Comstock, 154 F.3d 845, 850 (8th Cir. 1998). These decisions reflect proper concern that the fairness, integrity, and public reputation of judicial proceedings are seriously affected when a defendant must spend additional time in prison on account of an illegal sentence. Accord Paladino, 401 F.3d at 483 ("It is a miscarriage of justice [justifying remand] to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person.").

A Booker error, on the other hand, presents a different situation. If the mandatory guidelines were properly applied, the sentence itself is not illegal under the advisory regime mandated by Booker, only the process the district court used in arriving at that sentence. In these circumstances, the fourth-factor inquiry seems more akin to United States v. Cotton, where the Supreme Court refused to exercise its discretion to review a plain Apprendi error -- failure to charge drug quantity in the indictment and submit that issue to the petit jury -- because "[t]he real threat to the 'fairness, integrity, and public reputation of judicial proceedings' would be if respondents, despite the overwhelming and uncontroverted evidence that they were

-13-

involved in a vast drug conspiracy, were to receive a sentence prescribed for those committing less substantial drug offenses because of an error that was never objected to at trial." 535 U.S. at 634. Thus, we do not foreclose the possibility that there may be plain Booker errors that meet the third Olano factor but not the fourth. See United States v. Bruce, 396 F.3d 697, 719-20 (6th Cir. 2005).

### III. Conviction Issues

Pirani's claims of trial error stem primarily from the government's cross-examination of defense witness Linda Graham. On direct exam, Graham opined as to Pirani's reputation for truthfulness in the community, buttressing her opinion by stating that she knew her son "was in good hands" when he was with Pirani. On cross exam, the prosecutor asked Graham a series of nine questions. Each question began, "Would your opinion of Louis Pirani's reputation for truthfulness change if you knew," and ended with various instances of alleged misconduct addressed in the government's case in chief. Pirani did not object to these questions at trial but argues plain error on appeal.

Pirani first argues that it was plain error to allow the prosecutor to ask these guilt-assuming questions, particularly one which assumed he was guilty of the charged offenses. A number of courts have condemned prosecutor questions that assume the defendant's guilt of the offense being tried as contrary to the accused's presumption of innocence. See United States v. Guzman, 167 F.3d 1350, 1352 (11th Cir. 1999). But the questions at issue here were not plain error. Only the last even obliquely referenced the charge that Pirani knowingly lied about owning an aircraft to federal authorities during an official investigation:

> Q. Would your opinion of Louis Pirani's reputation for truthfulness change if you knew that Louis Pirani has said that his brother, not he, was the sole owner of an airplane [when] Pirani's own records show that

-14-

he paid $9,300 in cash on the plane, not counting his half of the down payment?

The question is phrased in the abstract, without mention of an audience, a time, or a place for the alleged statement. It takes the form of a hypothetical, not of a fact known to the prosecution. Graham's answer, "These are allegations that until I receive something that convinced me that they were truthful, it just doesn't add up," was consistent with the presumption of innocence and properly left the truth of the matter to be determined by the jury. While we do not endorse the practice, and suspect that a timely objection to this question would have been sustained, the issue was forfeited at trial and does not cast doubt on the fairness, integrity, or public reputation of that judicial proceeding.

Pirani further argues that the district court committed plain error in allowing the prosecutor to question Graham, a reputation witness, about her opinion of Pirani's character. The contention is based on a false premise. Although defense counsel may have asked questions about Pirani's general reputation, Graham's answers offered her opinion of Pirani's character -- someone she could trust to take care of her son. When an accused offers evidence of a character trait, the government may rebut with cross examination inquiring into "relevant specific instances of conduct." Fed. R. Evid. 404(a)(1), 405(a); see United States v. Monteleone, 77 F.3d 1086, 1090 (8th Cir. 1996). Pirani acknowledges this principle but criticizes the district court for failing to conduct a sidebar or preliminary proceeding to be sure the prosecutor had a sufficient factual basis for the misconduct implied or assumed in the questions. We urged use of this procedure in United States v. Krapp, 815 F.2d 1183, 1186 (8th Cir. 1987). However, as in United States v. Bruguier, 161 F.3d 1145, 1149-50 (8th Cir. 1998), there was no plain error in failing to employ it because the questions dealt with events addressed in the government's case-in-chief, and we have no reason to think that government counsel had no factual basis for his implied assertions.

Finally, Pirani argues that the district court abused its discretion when it admitted into evidence a tape-recorded conversation in which Pirani stated to a cooperating officer that he had read about the investigation in the newspaper, knew officers who had been questioned and searched, but had no reason to be concerned. We review the district court's evidentiary rulings for clear abuse of discretion. See United States v. Montano-Gudino, 309 F.3d 501, 505 (8th Cir. 2002).

Pirani first argues that the evidence was irrelevant because, while the taped conversation tended to show he knew of the investigation, that fact was not an element of the charged offense, the unlawful making of false statements. Like the district court, we disagree. To meet its burden of proof, the government had to prove that Pirani knowingly made a false material statement. At a minimum, the recorded conversation tended to prove that Pirani knew his false statements to the interviewing agents were material to a government investigation.

Pirani next argues that the tape should have been excluded because its probative value was substantially outweighed by the risk of unfair prejudice. See Fed. R. Evid. 403. The tape includes Pirani and others swearing expressively during a casual conversation among officers, culminating in Pirani's declaration that he had no reason to worry about the investigation. We doubt Pirani's profane bravado came as a surprise to the jury, much less colored its view of whether he had committed the offenses charged. In any event, the profanities did not create a risk of *unfair* prejudice that substantially outweighed the tape's probative value. There was no abuse of the district court's substantial evidentiary discretion.

The judgment of the district court is AFFIRMED. Let this court's mandate issue forthwith.

HEANEY, Circuit Judge, dissenting.

This is not a plain error case – one in which the defendant failed to preserve a Sixth Amendment sentencing error.[7] Rather, the defendant here preserved the error by way of objections he lodged with the district court. It follows that under United States v. Booker, 125 S. Ct. 738 (2005), we have no alternative but to remand this matter for resentencing under a regime that passes constitutional muster.

Louis F. Pirani, a former Crittenden County Sheriff's Deputy, was charged with and convicted of making false statements to federal authorities[8] who were investigating allegations that Crittenden deputies were keeping seized drug money for personal use. The United States Sentencing Guidelines (hereinafter Guidelines) mandated a base offense level of 6 for false statement convictions. The Guidelines also contained a cross-reference provision that required the sentencing court to apply another, higher guideline offense level if the facts of the crime more aptly fit another guideline. Based on the facts adduced at trial (but not proven to a jury), the district court determined that Pirani's false statement conviction was more akin to obstruction of justice. Thus, employing the cross-reference provision, the district court applied the obstruction of justice Guidelines offense level of 12 and effectively increased Pirani's sentencing range from 0 to 6 months to 10 to 16 months.

At sentencing, there was extended discussion of whether cross-reference to the obstruction of justice guideline was proper. First, Pirani objected to the district court sentencing him for obstruction of justice because that crime was not alleged in the indictment. (Sent. Tr. at 16-17.) The government responded by stating that the facts necessary to convict Pirani of obstructing justice, in violation of 18 U.S.C. § 1505,

---

[7]If this were a plain error case, I would concur without reservation in Judge Bye's thoughtful dissent.

[8]18 U.S.C. § 1001(a).

were in the indictment, even though that substantive crime was not charged.[9] (Id. at 24-25.) Pirani maintained that he could not have been convicted of obstruction of justice based on the facts in the indictment. (Id. at 30.) The court then determined that it would use the obstruction of justice cross-reference, and stated that "all objections are preserved for purposes of appeal." (Id. at 33.) Pirani then reiterated his objection to being sentenced as if he were convicted of the substantive crime of obstruction of justice, specifically arguing that "the elements [of § 1505] have not been met." (Id. at 35.)

At another point in the sentencing proceeding, the district court was pondering the application of certain sentence enhancements. Pirani acknowledged that, pursuant to the Guidelines, the district court was required to use the preponderance-of-the-evidence standard in determining the factual predicate for enhancements. He nonetheless asked the court to employ the beyond-a-reasonable-doubt standard for any determinations that would result in the imposition of a prison sentence. (Id. at 21.)

This court has consistently held that a defendant preserves his Sixth Amendment issue for review by objecting to the factual predicate for Guidelines enhancements. In United States v. Coffey, 395 F.3d 856 (8th Cir. 2005), the defendant was convicted of conspiracy to distribute or possess with intent to distribute 50 or more grams of crack. His presentence report recommended increasing his offense level (and thus, his mandatory sentencing range) as if he were responsible for 2.7 kilograms of crack. The jury did not find him responsible for this higher amount, nor did he admit responsibility for it. He objected to the presentence report's drug quantity calculation, arguing that "there was insufficient evidence to

_____

[9]Of course, this argument would fail post-Booker, as the Supreme Court has now made clear that facts alleged in the indictment but not proven to a jury beyond a reasonable doubt are not sufficient to support a sentence enhancement under a mandatory guidelines system. See Booker, 125 S. Ct. at 756.

calculate any quantity of drugs for his offense." Id. at 859. We held that this objection sufficiently preserved the issue for appellate review. Id. at 861.

In United States v. Fox, 396 F.3d 1018 (8th Cir. 2005), the defendant was convicted of conspiracy to distribute methamphetamine. The jury found him responsible for between 50 and 500 grams of methamphetamine, but the presentence report attributed roughly 1.8 kilograms to him. He "filed an objection to this recommendation and argued the objection during the sentencing hearing before the district court." Id. at 1026. The Fox court did not question the specificity of the defendant's objection,[10] nor did it cite to Coffey.[11] Nonetheless, it found that the defendant's objection to the quantity determination "preserved this sentencing issue, and pursuant to Booker, [the defendant] is entitled to a new sentencing proceeding." Fox, 396 F.3d at 1027. Similarly, in United States v. Fellers, 397 F.3d 1090 (8th Cir. 2005), the defendant was found guilty of conspiracy to distribute and possess with intent to distribute between 50 and 500 grams of methamphetamine. Again, the presentence report suggested increasing the defendant's Guidelines offense level based on a drug amount higher than the jury finding, and the defendant objected. Our court remanded the case for resentencing "because Fellers raised this issue at sentencing," id. at 1100, but provided no further elucidation on the nature of his objection.

---

[10]Although not contained in the appellate court decision, a review of the district court sentencing transcript in Fox reveals that the defendant objected to use of the preponderance-of-the-evidence standard for drug quantity determinations and questioned the veracity of the witnesses supporting a drug quantity larger than the jury's finding.

[11]The majority states that the Fox and other panels have "followed" the decision in Coffey. Ante at 6. This is technically true, but may be misinterpreted. Fox followed Coffey, in the sense that it was issued after Coffey. Nothing in Fox, however, suggests that the decision was *based on* Coffey; indeed, there is not a single citation to Coffey or any other case (save Booker itself) in support of the Fox panel's preservation-of-error analysis.

-19-

United States v. Selwyn, 398 F.3d 1064 (8th Cir. 2005), and United States v. Sdoulam, 398 F.3d 981 (8th Cir. 2005), followed with similar results. The defendant in Selwyn was convicted of a drug offense, but "[n]o drug quantity was stated in the indictment or found by the jury." Selwyn, 398 F.3d at 1066. He objected to the basis for the district court's drug quantity findings, which we held preserved the Sixth Amendment issue for appeal. Id. at 1067. In Sdoulam, a defendant convicted of two methamphetamine-related offenses objected to the district court's calculation of pseudoephedrine quantity. Citing Coffey and Fox, the court remanded the case for resentencing, noting that the "circuit has held that when a defendant objects to a District Court's determination of drug quantity at sentencing, the defendant preserves a Booker-based challenge to his sentence and is entitled to a new sentencing proceeding." Sdoulam, 398 F.3d at 995.

The majority now disregards what I and several other judges on the court believe to be settled law in this circuit, and asserts that cases such as Coffey and Fox are "inconsistent with" a footnote in United States v. Diaz, 296 F.3d 680, 683 n.4 (8th Cir. 2002) (en banc), and thus "they are not controlling precedent." Ante at 7. This comes as somewhat of a surprise. The court en banc can alter the state of our circuit law and overturn prior decisions, but we ought not rely on a footnote to accomplish this.

The majority contends that Diaz held that "a sufficiency-of-proof objection did not preserve a claim of Apprendi error." Ante at 7 (citing Diaz, 296 F.3d at 683 n.4). In Diaz, the defendants were charged with and convicted of several offenses related to a drug conspiracy. The jury did not make any findings as to drug quantity, yet the district court sentenced the defendants to terms that were beyond the statutory maximum,[12] which the defendants contended violated Apprendi's rule that "any fact

---

[12]After the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), the term "statutory maximum" took on something of a different meaning:  the maximum guideline sentence authorized by jury-proven or admitted

that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Because the defendants did not raise their Sixth Amendment claims before the district court, our court's review was limited to plain error. Diaz asserted that he *had* raised the issue before the district court, but in a footnote our court disagreed:

> Diaz contends that he did in fact raise Apprendi issues before the district court at sentencing, thus entitling him to *de novo* review. It appears to us, however, that his contention in the district court was not an Apprendi-style claim, *but rather a claim that the government did not prove all the elements of the crime listed in the indictment.*

Diaz, 296 F.3d at 683 n.4 (second emphasis added).

Obviously, a claim that the government has failed in proving the elements of an offense is quite different than a defendant's challenge to his sentence. Drug quantity typically is not an "element of the crime" that the government is required to prove to a jury, and was not one in Diaz. See, e.g., United States v. Serrano-Lopez, 366 F.3d 628, 638 (8th Cir. 2004) ("It is the statute, not the indictment, that sets the elements of the offense that must be proven beyond a reasonable doubt. As we have explained, drug quantity is not such an element unless the quantity can and does lead to the imposition of a sentence greater than the otherwise applicable statutory maximum."); Diaz, 296 F.3d 680 (2002), Gov't Br. at 45, available at 2001 WL34096384 (affirming that there was no jury finding with respect to drug quantity in Diaz's case). Thus, when the appellate court described Diaz's objection as a challenge to the government's proof regarding the elements of the offense, his objection before the district court must have involved a matter different from the

---

conduct. Blakely, 124 S. Ct. at 2537. In Diaz, the issue involved the maximum sentence authorized by the statutes of conviction. Diaz, 296 F.3d at 682.

Sixth Amendment argument he pursued on appeal, as that issue was rooted in the district court's drug quantity findings. Footnote 4 in Diaz does not stand as a broad prohibition on preserving Sixth Amendment sentencing claims by way of an objection to the government's proof at sentencing. It has not been cited for that proposition in our circuit or any other, and the majority's characterization as such today is error.[13]

The defendants in Coffey, Fox, Fellers, Selwyn, and Sdoulam all consistently challenged the proof related to the district court's drug quantity calculations and the resultant increase in their sentences.[14] In so doing, these defendants apprised the district court that it could not increase their sentences on the basis of admitted drug-

---

[13]In United States v. Palmer, 297 F.3d 760 (8th Cir. 2002), a defendant attempted to raise an Apprendi claim in his second appeal, and claimed he had preserved the issue by arguing in his first appeal that the district court erred in its drug quantity determinations. While our court disagreed, I do not believe Palmer stands for the proposition that an evidentiary challenge is insufficient to preserve a Sixth Amendment sentencing claim. First, the issue in Palmer was waiver, rather than forfeiture, of a claim. More importantly, though, in the defendant's first appeal, we limited our remand to resentencing without the imposition of an erroneously applied enhancement that was unrelated to drug quantity. See United States v. Jones, 160 F.3d 473, 482-83 (8th Cir. 1998) (remanding the Palmer defendant's case for resentencing without the imposition of a role-in-the-offense enhancement). Thus, the Apprendi issue the defendant attempted to raise in his second appeal was not available for review. See, e.g., United States v. Behler, 187 F.3d 772, 776-77 (8th Cir. 1999) (refusing to consider the defendant's challenge to his sentence when issues related to it were not within the scope of the court's remand).

[14]United States v. Sayre, 400 F.3d 599, 600-01 & n.3 (8th Cir. 2005), has no impact on Pirani's case because the panel did not decide any matters related to what type of objection preserves Sixth Amendment sentencing issues. In contrast, each of these cases, like Pirani's, involved Sixth Amendment sentencing error: increases in the defendant's sentence based on conduct that was neither admitted nor proven to a jury. I express no opinion here on whether the result would be the same if the error was simply that the district court sentenced the defendant under the belief that the Guidelines were mandatory, but imposed no enhancements.

related conduct. An objection to a presentence report's basis for a sentence enhancement informs the court that it must "rule on the dispute." Fed. R. Crim. P. 32(i)(3)(B). When that objection challenges the evidence supporting an enhancement, it is incumbent upon the district court to rule on whether the disputed evidence is sufficient to support the enhancement. To my mind, such an objection notifies the district court that it is then required to make sentencing determinations in a manner that comports with the law; that is, not imposing sentence enhancements except where the defendant admits to the enhancement's factual basis or the government proves the facts supporting the enhancement to a jury beyond a reasonable doubt.

I am not alone in suggesting that a challenge to the basis for a sentence enhancement preserves the Sixth Amendment sentencing issue for appeal. In United States v. Akpan, ___ F.3d ___, 2005 WL 852416 (5th Cir. Apr. 14, 2005), the Fifth Circuit was faced with a similar issue in a case involving a defendant, Okoro, who was convicted of mail fraud, healthcare fraud, and filing false tax returns. Okoro argued that his sentence violated Booker. The government contended that Okoro had failed to preserve the issue through a sufficient objection in the district court. The Fifth Circuit disagreed with the government:

> Okoro did not . . . fail to preserve his Booker challenge to the district court's loss calculation. Our review of Okoro's pre-sentencing objections to the Presentence Investigation Report ("PSR") and his objections during his sentencing reveal that Okoro repeatedly objected to the district court's determination of a range of financial loss between five and ten million dollars on the ground that that figure had not been proven at trial. Okoro also consistently urged that the district court confine its determination of loss to the amount alleged in the indictment. Although Okoro never explicitly mentioned the Sixth Amendment, Apprendi, or Blakely until his [Federal Rule of Appellate Procedure] 28(j) letter, we are satisfied that his objections adequately apprised the district court that Okoro was raising a Sixth Amendment objection to the loss calculation because the government did not prove to the jury

-23-

beyond a reasonable doubt that the loss was between five to ten million dollars.

Akpan, ___ F.3d at ___, 2005 WL 852416, at *11 (footnote omitted); accord United States v. McDaniel, 398 F.3d 540, 546-47 (6th Cir. 2005) (noting that a defendant may preserve a Sixth Amendment sentencing issue by objecting to application of "various sentencing enhancements"); United States v. Kosinski, 2005 WL 647777, at *8 (6th Cir. Mar. 22, 2005) (unpublished decision) ("Although Kosinski did not raise a Sixth Amendment objection in the sentencing court, he did object to the factual determinations made by the judge. Before this court, he filed briefs with Sixth Amendment arguments based first on Blakely v. Washington, 124 S. Ct. 2531 (2004), and then on Booker, as those cases were decided. We are satisfied that the objection below to judicial fact-finding preserved the Sixth Amendment issue for review."); United States v. Story, 2005 WL 566696, at *6-*7 (6th Cir. Mar. 9, 2005) (unpublished decision) (finding a defendant's argument that a Guidelines enhancement for possession of a firearm should not apply because it was based on unreliable trial testimony was sufficient to preserve the Sixth Amendment sentencing issue); cf. United States v. Garcia, ___ F.3d ___, 2005 WL 845532 (11th Cir. Apr. 13, 2005) (holding that a defendant adequately preserved Sixth Amendment sentencing claim by objecting to the district court's determination of a drug quantity larger than the jury finding).

In short, Coffey, Fox, and their progeny are correctly decided because the Sixth Amendment sentencing error was preserved in each case. It was also preserved here. After being convicted of making false statements, Pirani objected to being sentenced as if he were convicted of obstructing justice because that crime was not alleged in the indictment. He further argued that the district court should employ the beyond-a-reasonable-doubt standard at sentencing, and finally asserted that the government had not met its burden of proving the elements of obstruction of justice. What more could Pirani have done? He challenged the increase in his sentence based on uncharged conduct, and implored the district court not to send him to prison based on facts not

proven beyond a reasonable doubt.  Even the Fifth and Eleventh Circuits, which the majority sees fit to follow in its plain-error analysis of Booker, would likely have found Pirani's objections sufficient to preserve the matter for review.  See United States v. Akpan, ___ F.3d ___, 2005 WL 852416, at *11 (5th Cir. Apr. 14, 2005) (finding objections to the district court's loss calculation were sufficient to preserve a Booker claim despite no mention of Apprendi, Blakely, or the Sixth Amendment before the district court); United States v. Dowling, ___ F.3d ___, 2005 WL 658938, at *3 (11th Cir. Mar. 23, 2005) (holding that a defendant may preserve his Sixth Amendment sentencing issue by objecting to the imposition of a sentence based on evidence not proven to a jury beyond a reasonable doubt).

The majority accepts my assessment of the record with respect to Pirani's objections, but finds them insufficient "[b]ecause Pirani did not couple this statement with a specific reference to Apprendi or Booker or the Sixth Amendment."  Ante at 7.  Nothing in Booker suggests that magic words must be used; the substance of the objection is what is important.  Certainly, we could not have expected Pirani to lodge an objection based on Blakely or Booker with the district court, as neither of those cases were decided when Pirani was sentenced.  Moreover, at that time, the law of our circuit was that Apprendi did not require enhancements in a mandatory guidelines system to be proven to a jury beyond a reasonable doubt.  See Diaz, 296 F.3d at 682 ("Use of judicially determined drug quantity as a basis for sentencing is permissible, however, so long as the defendant's sentence does not exceed the statutory maximum sentence available for an indeterminate quantity of the drug, the offense simpliciter."); see also United States v. Alvarez, 320 F.3d 765, 766-67 (8th Cir. 2003) (noting that Diaz "squarely rejected" the view that Apprendi required facts that increase a defendant's guideline range to be proven to a jury beyond a reasonable doubt).  Particularly with regard to Pirani's request to be sentenced on the basis of facts found beyond a reasonable doubt and his objection to being sentenced on the

-25-

basis of a crime not charged in the indictment,[15] this is entirely consistent with Federal Rule of Criminal Procedure 51(b)'s statement that "[a] party may preserve a claim of error by informing the court . . . of the action the party wishes the court to take."

The majority seems to feel that by strictly requiring defendants to assert Sixth Amendment sentencing objections with technical precision, it is staying true to Booker's requirement that reviewing courts must apply "ordinary prudential doctrines, determining, for example, whether the issue was raised below, and whether it fails the 'plain-error' test." Booker, 125 S. Ct. at 769. I doubt this approach will have the desired effect, at least at the district court level.

> The more stringent prerequisites imposed by [the plain error rule], as compared to [the harmless error rule] are designed to encourage a defendant to raise objections during the proceeding where they might be corrected, rather than strategically withhold an objection as a basis of appeal. By contrast, to require a defendant to raise all possible objections at trial despite settled law to the contrary would encourage frivolous arguments, impeding the proceeding and wasting judicial resources.

United States v. Baumgardner, 85 F.3d 1305, 1308-09 (8th Cir. 1996) (citation omitted); see also United States v. Gonzalez-Huerta, 403 F.3d 727, 2005 WL 807008, at *19 (10th Cir. 2005) (en banc) (Briscoe, J., concurring in part and dissenting in part) (characterizing as "disingenuous" and "unfair" the practice of applying plain error review to Booker claims because it was "unreasonable in my view to conclude that Gonzalez-Huerta could and should have raised the issue below").

---

[15]At oral argument, counsel for the government agreed with my suggestion that an objection to being sentenced for matters not charged in the indictment is a Sixth Amendment argument.

The stated goal of the Guidelines was to create "a system that diminishes sentencing disparity."[16] Booker, 125 S. Ct. at 759. This goal is undermined when circuits apply different standards in determining whether a defendant sufficiently preserved his Sixth Amendment sentencing challenge in the district court, and is further undermined when circuits differ on the question of how to deal with Booker claims on plain error review. Hopefully, the Supreme Court will promptly resolve these differences, and do so in a manner true to the essence of Booker's concern for basic rights of the defendant under the Sixth Amendment.

MORRIS SHEPPARD ARNOLD, Circuit Judge, with whom SMITH, Circuit Judge, joins, dissenting.

I concur in all of the court's opinion except the portion of it that holds that Mr. Pirani is not entitled to plain error relief.

I believe that the court misses an opportunity in not adopting the highly practical resolution reached in United States v. Paladino, 401 F.3d 471 (7th Cir. 2005), where the court remanded the case to allow the sentencing judge to certify whether he would have given a different sentence had he treated the guidelines merely as advisory. Our court rejects this solution as an improper delegation of its authority, but this characterization misses the mark. A remand in the instant circumstances is not a delegation of anything; it is simply a device to gather facts relevant to determining the answer to a question that it is our duty to answer. That

---

[16]I have noted on several occasions my personal view that while the Guidelines may have led to greater sentencing uniformity among district judges, they have not accounted for the significant disparities that exist in the charging, prosecuting, and sentencing decisions made by the executive branch of our criminal justice system. See generally Gerald W. Heaney, The Reality of Guidelines Sentencing, 44 St. Louis L.J. 293 (Spring 2000); Gerald W. Heaney, The Reality of Guidelines Sentencing: No End To Disparity, 28 Am. Crim. L.R. 161 (1991).

question is whether the district court would have given a different sentence had it been prescient enough to foresee Booker. The answer to that question is hard to divine on the present record. Why not find out? In responding to that question, the district court would not be doing our job; its response would enable us to do our job.

The court's reluctance to remand is especially difficult to understand in this case, since, as the court itself points out, the district court twice expressed its dislike of the sentencing guidelines, remarked that an alternative sentencing possibility was "too high," and sentenced Mr. Pirani to the lowest guideline sentence available. It might even be that this record by itself creates a sufficient likelihood that the court would have given Mr. Pirani a lower sentence under the Booker regime that a remand for resentencing is warranted under our previous cases. See, e.g., United States v. Warren, 361 F.3d 1055, 1059 (8th Cir. 2004). At the very least, the record supports a short delay to ask the district court whether it would have imposed a different sentence.

A harder question for me is whether Mr. Pirani will suffer a miscarriage of justice here if the district court would have given him a shorter sentence had it been fully aware of the requirements of Booker. It might reasonably be argued that since the sentence that was imposed is not unreasonable under Booker, it could hardly be a miscarriage of justice. But we have given plain error relief under the former regime where a district court applied the wrong guideline, see, e.g., United States v. Weaver, 161 F.3d 528, 530 (8th Cir. 1998), and I think that the present case is sufficiently similar to these cases that it falls within their rule. To put it simply, it is unjust for a person to be deprived for a substantial time of his most prized right, his liberty, because of a fundamental misapprehension of law by a court of the United States.

I therefore respectfully dissent.

BYE, Circuit Judge, concurring in part, dissenting in part.

I dissent from section II of the majority opinion, in all other respects I concur. The phrase "three-ring circus" (referring to the three-way circuit split) has been used to describe the federal circuits' disparate handling of <u>Booker</u> pipeline cases. Such a phrase is descriptive, nonetheless, it is probably more appropriate to characterize the split as a three-ring circus with twelve unique acts each attempting to dazzle us with its compelling logic. Yet, despite the unique nature of each act, like the conspicuous facial hair on the bearded lady, one common theme prevails–the undeniable difficulty in assessing the prejudice suffered by any particular defendant. <u>See</u> <u>United States v. Shelton</u>, 400 F.3d 1325, 1332 (1st Cir. 2005); <u>United States v. Crosby</u>, 397 F.3d 103, 117-18 (2d Cir. 2005); <u>United States v. Hughes</u>, 396 F.3d 374, 381 n.8 (4th Cir. 2005), <u>amended on rehearing by</u>, 401 F.3d 540 (4th Cir. 2005); <u>United States v. Mares</u>, 402 F.3d 511, 522 (5th Cir. 2005); <u>United States v. Oliver</u>, 397 F.3d 369, 379 n.3 (6th Cir. 2005); <u>United States v. Paladino</u>, 401 F.3d 471, 482 (7th Cir. 2005); <u>United States v. Dazey</u>, No.03-6187, 2005 WL 846227, at *20 (10th Cir. April 13, 2005); United <u>States v. Rodriguez</u>, 398 F.3d 1291, 1301 (11th Cir. 2005); <u>United States v. Coles</u>, No. 03-3113, 2005 WL 783069, at *6 (D.C. Cir. Apr. 8, 2005).

When faced with such difficulty the Supreme Court informs us in certain instances an error should be presumed prejudicial.[17] <u>United States v. Olano</u>, 507 U.S. 725, 735 (1993). The Court left undetermined the bounds of which errors should and should not be considered presumptively prejudicial, <u>id.</u> at 735-39, and it has not been presented with an opportunity to elaborate on the bounds of the presumption. However, the lack of such an opportunity does not affect the validity of the

---

[17]The <u>Olano</u> court recognized three separate categories of plain error: (1) a category where the defendant must make a specific showing of prejudice; (2) a special category of errors that can be corrected regardless of their effect on the outcome; and (3) a category of errors that should be presumed prejudicial if the defendant cannot make a specific showing of prejudice. 507 U.S. at 735.

presumption, as the lower courts have the power and duty to address such bounds. Indeed, in response to this duty the lower courts have begun to carve a niche for the presumption. See United States v. Serrano-Beauvaix, 400 F.3d 50, 59 (1st Cir. 2005) (Lipez, J., concurring) (discussing situations where "[c]ourts have presumed prejudice for errors that, by their very nature, make a demonstration of prejudice exceptionally difficult"). These courts have found a presumption of prejudice appropriate "in cases where the inherent nature of the error [make] it exceptionally difficult for the defendant to demonstrate that the outcome of the lower proceeding would [be] different had the error not occurred." United States v. Barnett, 398 F.3d 516, 526-27 (6th Cir. 2005) (citing United States v. Reyna, 358 F.3d 344, 351-52 (5th Cir. 2004) (en banc); United States v. Adams, 252 F.3d 276, 287 (3d Cir. 2001); United States v. Riascos-Suarez, 73 F.3d 616, 627 (6th Cir. 1996)).

Our court, for example, applied a presumption of prejudice to a plain error situation in Rush v. Smith, 56 F.3d 918 (8th Cir. 1995) (en banc). There, Timothy Rush, an African-American, appealed from an adverse jury verdict on his civil rights action against two police officers whom he claimed used excessive force against him. Id. at 919. The appeal revolved around the dismissal of the only African-American juror, who the court dismissed after a snowstorm caused her to be unable to attend trial. Id. at 920. In attempting to explain the juror's absence to the remainder of the jury, the court made some ill-advised comments regarding racial solidarity. Id. at 921. Applying Olano's plain error standard, our court sitting en banc determined on the particular facts of the case the potential for prejudice in the minds of the jurors was so great that no specific showing of actual prejudice was required. Id. at 923. The court reached this holding "[b]ecause of the impracticality of determining what, if any, effect this racially-divisive remark had on the jury. . . ." Id.

Like the impracticality of determining the prejudice actually suffered when a trial judge makes racially divisive remarks to the jury, it is impractical, if not impossible, to gauge the prejudice actually suffered by a defendant sentenced under a mandatory as opposed to an advisory guideline regime. The duty of showing

prejudice which the majority seeks to bestow on a defendant is like asking a defendant to prove the existence of a divine-being or the existence of life on a planet other than our own. The evidence either does not exist or is beyond the defendant's mere human capabilities, thus any attempt to explain how a defendant may meet this showing, without an explicit statement on the record by the sentencing judge, is nothing more than an empty exercise in casuistry.

Admittedly, plain error review often requires an appellate court to speculate, but this judicial conjecture is at least based upon concrete evidentiary considerations. In a situation such as the present, set up by the dramatic change in the federal sentencing framework, we have very little in the way of concrete and reliable indicators of how a defendant was prejudiced by a judge's mistaken mandatory application of the guidelines. Some have suggested we can tell how a judge will sentence under an advisory regime by looking to where the defendant's sentence fell within the guideline range available to the district court under the mandatory regime. In other words, those espousing this viewpoint suggest a judge is unlikely to give a defendant a reduced sentence if his sentence fell in the middle to upper ends of the guideline range. However, even though a judge may have declined to exercise discretion to select a lower sentence under the mandatory regime, this does not necessarily imply the judge would duplicate the sentence under the advisory regime, for two reasons. First, because a judge strictly applying the mandatory guidelines in a case falling within an offense's heartland, regardless of the jurist's private views on the adequacy of the guideline range, would pick a sentence relative to the other defendants falling within such range. Paladino, 401 F.3d at 482. Thus, the fact a judge applied the guidelines in the manner Congress and the Sentencing Commission intended cannot be viewed as an implicit acquiescence to a sentence within the guideline range under an advisory regime. Second, the position where a sentence fell under the mandatory regime is not a reliable indicator of the prejudice suffered by a defendant seeking resentencing under an advisory regime because it overlooks the fact a defendant's sentence will now be affected by a judge's greater discretion to consider the other factors under 18 U.S.C. § 3553(a). Barnett, 398 F.3d at 528.

Pre-Booker, the Supreme Court made clear the correctly calculated guideline range trumped all other factors under 18 U.S.C. § 3553(a). United States v. Booker, 125 S. Ct. 738, 750 (2005) (citing Mistretta v. United States, 488 U.S. 361, 391 (1989)). Post-Booker, the correctly calculated guideline range presumably carries equal weight with the other § 3553(a) factors. See United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wis. 2005) (finding the guidelines are just one of a number of sentencing factors to be considered). But see United States v. Wilson, 350 F. Supp. 2d 910, 911 (D. Utah 2005) (stating the guidelines should be given considerable weight and followed in all but the most unusual circumstances). Thus, in addition to consideration of the guideline range the court must give equal consideration to sentencing factors such as just punishment, deterrence, incapacitation, rehabilitation, and the need for the sentence to reflect the nature and circumstances of the offense and the history and characteristics of the defendant. See § 3553(a).

In assessing the history and characteristics of the defendant there is no limitation on the information concerning the background, character, and conduct of a person which a court may consider for the purposes of imposing an appropriate sentence. Booker, 125 S. Ct. at 760 (citing 18 U.S.C. § 3661). Accordingly, factors previously deemed ordinarily irrelevant to sentencing under Chapter 5H of the guidelines such as the defendant's age, education and vocational skills, mental and emotional conditions, physical condition, employment record, family ties and responsibilities, and charitable service are now valid considerations for a court in imposing a sentence. Ranum, 353 F. Supp. 2d at 985-86. We cannot know how consideration of factors such as these will affect a defendant's sentence and to speculate is tantamount to performing the sentencing function at the appellate level. See Williams v. United States, 503 U.S. 193, 205 (1992) ("[I]t is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.").

Perhaps the only reliable indicator of the prejudice actually suffered by the defendant would be unambiguous remarks on the record by the sentencing judge indicating she would give him a lower sentence had she the discretion to do so. Relief from error, however, should not depend on the vocal nature of the sentencing judge, United States v. Antonakopoulos, 399 F.3d 68, 81 (1st Cir. 2005), because, for one thing, prior to Blakely there was no reason to provide such information. Rarely, for instance, is a sentencing judge as vocal as the court in United States v. Dyck, 287 F. Supp. 2d 1016 (D. N.D. 2003) (dissenting upon imposition of sentence). In fact, in light of the prevailing political climate many district judges would have been reluctant to vocalize any criticism of a guideline sentence. See United States v. Heldeman, No. 04-1915, 2005 WL 708397, at *3 (1st Cir. Mar. 29, 2005) (recognizing a district judge may well not have expressed his or her reservations because the guidelines made them hopeless); see also Douglas A. Kelley, Minnesota Federal Judge Caught in a Constitutional Crossfire, 27 Hamline L. Rev. 427 (2004) (discussing the plight of the Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota). The futility of expressing a desire to deviate downward from guideline range is even more pronounced in light of our pre-Blakely sentencing law, in which we overturned twenty-three out of twenty-five downward departures and affirmed forty-four out of forty-six upward departures. See United States v. Yirkovsky, 338 F.3d 936, 945 (8th Cir. 2003) (Heaney J., dissenting) (highlighting statistics from May 2000 to July 2003). Therefore, while a district court's unambiguous statements may affirmatively establish prejudice, the absence of comment does not establish the antithesis. In fact, in the absence of reasoned deliberation of the other § 3553(a) factors, not even the sentencing judge herself may be able to predict the term of imprisonment she would impose upon resentencing. Because of this uncertainty, in the absence of proof to the contrary, we must presume the defendant was prejudiced by the error, as this approach best promotes the policies which underpin Rule 52(b).

The policies underlying plain error "encourage timely objections and reduce wasteful reversals by demanding strenuous exertion to get relief for unpreserved

error." United States v. Dominguez Benitez, 542 U.S. 74, 124 S. Ct. 2333, 2340 (2004). In this regard, the plain-error standard attempts to strike a balance between "the proper functioning of the adversary system, efficiency in managing litigation, and the demands of justice." United States v. Barnett, 398 F.3d 516, 532 (6th Cir. 2005) (Gwin, J., concurring) (internal quotation omitted). "If every error resulted in reversal, trial courts would spend inordinate amounts of time re-trying cases that involved insubstantial errors." Id. Conversely, "[a] rule that never considered errors unless there had been a trial objection 'would result in counsel's inevitably making a long laundry list of objections to rulings that were plainly supported by existing precedent.'" Id. (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)). I am concerned the unnecessarily rigid plain error standard championed by the majority disrupts this balance. To preserve error for a client, a conscientious lawyer, under a fair reading of the majority opinion, must now raise a laundry list of objections before the district court, even to those issues deemed by all appellate courts to be well-settled.

As a matter of fact, the issue necessitating our plain error discussion was once well-settled. See, e.g., United States v. Guevara, 277 F.3d 111, 120 n.4 (2d Cir. 2001) (listing circuits that held Apprendi did not apply to the guidelines). While we should concern ourselves about the policies underlying Rule 52(b), we must not forget that any objection to what we now consider Booker or Blakely error was discouraged by doctrine equally pervasive as plain error, namely the prohibition against frivolous arguments. In actuality, a pre-Blakely demand by defendants to have a jury find facts applicable to sentencing beyond a reasonable doubt would face a cold reception. While some judges may have simply dismissed the argument, other judges would have rejected it as ridiculous, while still others would have admonished the lawyer for wasting the court's time. When so much of a lawyer's effectiveness is based upon his or her reputation and credibility, why would any advocate risk diluting any meritorious arguments with something the overwhelming majority of judges would have deemed frivolous. The majority now sets out to punish defendants for failing to burden the court with objections deemed frivolous only a matter of months

ago. "Frankly, 'it seems unfair to fault [the defendant] for failing to raise at [sentencing] an objection based upon a rule that was not announced until after the [sentencing] was concluded.'" United States v. Serrano-Beauvaix, 400 F.3d 50, 60 (1st Cir. 2005) (Lipez, J., concurring) (quoting United States v. Barone, 114 F.3d 1284, 1294 (1st Cir. 1997)).

It would therefore appear the presumed prejudice exception to the prejudice requirement of the third prong of plain error review was tailor-made for Booker-type errors. Thus, in contrast to the majority which adopts the approach of the First, Fifth and Eleventh Circuits, I would adopt the approach thoroughly articulated by the Sixth Circuit in Barnett. Applying this approach to Pirani, the government on this record cannot overcome the presumption of prejudice.

In regard to the fourth prong of plain error review, which allows the court to exercise its discretion to correct a plain error if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings, the majority compares the situation here to United States v. Cotton, 535 U.S. 625 (2002). Such a comparison is undeserved. In Cotton, the Supreme Court declined to exercise its discretion under the fourth prong of plain error review where the government failed to present evidence of drug quantity to a grand jury in violation of the rule expressed in Apprendi v. New Jersey, 530 U.S. 466 (2000). Cotton, 535 U.S. at 632. The Court stated the fairness and integrity of criminal justice system was not threatened by this error because the evidence of drug quantity was overwhelming and essentially uncontroverted, thus a grand jury surely would have found the requisite amount. Id. at 633-34. Thus, in Cotton, had the drug quantity been properly presented to the grand jury and alleged in the indictment the outcome would have mirrored what actually happened in the original proceeding.

The same cannot be said with any certainty in the present case. The outcome of Pirani's sentence absent the district court's erroneous application of the mandatory guidelines would not necessarily mirror what happened at the original sentencing

because the sentencing process has changed allowing the district court to consider factors previously deemed irrelevant. Therefore, unlike Cotton, we do not know what the outcome would be, and such uncertainty strikes at the heart of the fairness, integrity and public reputation of the judicial system. Paladino, 401 F.3d at 483 ("It is a miscarriage of justice to give a person an illegal sentence that increases his punishment, just as it is to convict an innocent person."). I would therefore exercise our discretion to vacate Pirani's sentence and remand to the district court for resentencing.

_____