# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2244

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Jerry Urkevich, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 16, 2004
Filed: May 20, 2005

_____

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and RILEY,
    Circuit Judges.

_____

RILEY, Circuit Judge.

Jerry Urkevich (Urkevich) appeals his convictions and sentence after a jury found him guilty of one count of conspiracy with intent to distribute methamphetamine (Count I), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846, and three counts of possession of a firearm in furtherance of a drug trafficking offense (Counts II, III, and V), in violation of 18 U.S.C. § 924(c). The district court[1] sentenced Urkevich to an aggregate sentence of 895 months' imprisonment: 235

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

months on Count I, 60 months on Count II, 300 months on Count III, and 300 months on Count V, with the terms of imprisonment to run consecutively to one another. On appeal, Urkevich argues (1) the district court improperly instructed the jury regarding the firearms charges, (2) the convictions are not supported by sufficient evidence, (3) the United States Sentencing Guidelines (U.S.S.G.) are unconstitutional, (4) the district court incorrectly applied a two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice, and (5) the district court erred in calculating the drug quantity attributable to Urkevich. We affirm in all respects.

## I.       BACKGROUND

This case involves a drug distribution operation conducted out of Urkevich's residence at 1924 South 14th Street in Omaha, Nebraska. From January 2001 through January 2003, police officers searched Urkevich's residence five times. On January 5, 2001, members of the emergency response unit and the Metro Area Drug Task Force executed a search warrant at Urkevich's residence. Under Urkevich's bedroom mattress, officers discovered a loaded nine millimeter Walther PPK .380 caliber pistol. Officers also discovered drug paraphernalia, 3 baggies containing a total of 1.75 grams of methamphetamine, 2 ecstasy pills, 6.2 grams of marijuana, an electronic digital scale, and drug records. A search of Urkevich's person revealed cash totaling $2,653 in his pocket. Urkevich told officers $1,100 of the cash was drug proceeds, and the balance was his personal money used to pay bills. Urkevich explained he and his friends sometimes pooled their money together to purchase larger quantities of methamphetamine to get a lower price. Urkevich further stated he personally used eighty percent of the methamphetamine and sold the rest. Urkevich told officers he borrowed the pistol "for protection" against Chad Rains (Rains), a person to whom Urkevich had distributed drugs. Officers did not arrest Urkevich on this date because they "were trying to develop [Urkevich] as an informant."

On August 9, 2001, members of the Omaha Police Narcotics Unit executed a no-knock search warrant at Urkevich's residence. During this search, officers discovered 5 baggies containing a total of 6.8 grams of methamphetamine, 8.5 grams of powder cocaine, several baggies of marijuana weighing a total of 27.5 grams, 79 hits of LSD, 7.5 grams of hallucinogenic mushrooms, 73 prescription Ardin pills, 2 boxes of anabolic steroids, 3 blue pills that tested positive for caffeine, a digital scale, handwritten drug records, a Sentry-brand safe, surveillance equipment (i.e., a front porch surveillance camera with a monitor inside the residence), $22,929 in cash, and a .32 caliber, six-shot revolver. The officers did not find any ammunition for the revolver. After this search, Urkevich told officers he actively distributed methamphetamine, selling to his friends, but he no longer kept large quantities of methamphetamine at his residence. Urkevich further stated $7,870 of the cash were drug proceeds, and he planned to purchase drugs with the remaining $15,000. Urkevich told officers the cocaine came from a man named Darrell, and Urkevich agreed "to set Darrell up."

On May 31, 2002, officers executed a third search warrant at Urkevich's residence. As officers approached Urkevich's residence, they observed Kurt Gallagher (Gallagher) leaving the residence. When Gallagher saw the officers, he threw a bag that had been hanging around his neck. When officers retrieved the bag, they found six baggies of methamphetamine, a baggie of hashish, and six pills. A search of Urkevich's residence revealed a baggie of hashish, a baggie of methamphetamine, a leather gram scale, and a Sentry-brand safe containing one ecstacy pill, one gram of marijuana, and two Vicodin pills. Officers also found a loaded Winchester 12-gauge shotgun leaning against the wall in Urkevich's living room.

On January 7, 2003, officers searched Urkevich's residence for a fourth time. This search revealed 5 baggies of crystal methamphetamine weighing a total of 21 grams, .2 grams of crack cocaine, a baggie containing 6.5 grams of

methamphetamine, 569 grams of marijuana, a digital scale, handwritten drug records, a radio channel scanner, surveillance camera equipment (i.e., three video camera eyes located in the front and rear of the residence and one hidden inside the Christmas tree with three monitors in three different rooms), $50 in cash, a loaded .380 caliber Llama pistol, and a magazine containing 7 rounds of ammunition. Several of these items, including the digital scale and baggies of methamphetamine, were discovered in Urkevich's computer room. Officers recovered the .380 caliber pistol and magazine from a toolbox located in Urkevich's computer room.

On January 24, 2003, officers arrested Urkevich pursuant to a federal arrest warrant. After arresting Urkevich, officers searched Urkevich's person and found approximately three grams of methamphetamine in his front pants pocket, and $486 in cash in his wallet. Urkevich gave officers permission to search his residence. This fifth search of Urkevich's residence uncovered a digital scale with heavy drug residue, several baggies of methamphetamine, and 107 grams of marijuana.

Urkevich was charged in a superseding indictment with five offenses: one count of conspiracy with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 846, and four separate counts of possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c). Urkevich unsuccessfully moved to suppress evidence, and the case proceeded to trial.

At trial, the government introduced the evidence outlined above, and called as witnesses several officers involved in conducting the searches of Urkevich's residence. The government also introduced testimony from alleged co-conspirators Tami Jo Marsolek, Darrell McElderry, Alfredo Ramirez-Alcazar (Ramirez-Alcazar), Gallagher, Jennifer Osborn, James Willett, Jose Ismael Carreno (Porky), Deborah Peterson, Amber Forbes, April Decenzo (Decenzo), and Larry Spicer, all of whom stated Urkevich distributed methamphetamine. The jury found Urkevich

-4-

(1) conspired with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine; and (2) possessed, in furtherance of a drug trafficking offense, the nine millimeter Walther PPK .380 caliber pistol, the Winchester 12-gauge shotgun, and the .380 caliber Llama pistol. The jury acquitted Urkevich on the firearm charge involving the .32 caliber six-shot revolver. Arguing the verdict was not supported by the evidence, Urkevich moved for a judgment of acquittal, which the district court denied.

Prior to sentencing, a probation officer prepared a presentence investigation report (PSR). The PSR attributed at least 5 kilograms but less than 15 kilograms of methamphetamine to Urkevich, and recommended Urkevich's base offense level be set at 36, pursuant to the drug quantity tables set forth in U.S.S.G. § 2D1.1(c)(2).

The PSR recommended a two-level enhancement, pursuant to U.S.S.G. § 3C1.1, for obstruction of justice, because Urkevich attempted to threaten and intimidate witnesses. This enhancement recommendation was based on Ramirez-Alcazar's trial testimony offer of proof that, while he was incarcerated at the same institution as Urkevich, he heard Urkevich tell inmate Rudy Gill (Gill) that Ramirez-Alcazar and Porky "are some snitches." Ramirez-Alcazar further testified that, two to three hours later, Gill told Ramirez-Alcazar that Urkevich had offered to pay Gill, or put money on his prison book account, if Gill would stab Ramirez-Alcazar or Porky. Because Urkevich knew where Ramirez-Alcazar's family lived, this information caused Ramirez-Alcazar to fear for his safety and for the safety of his family. Ramirez-Alcazar reported Urkevich's threat to Omaha Police Sergeant Desler, who testified he investigated allegations of threats made by Urkevich against Ramirez-Alcazar and Porky.

Urkevich objected to the PSR's drug quantity calculation and to the two-level enhancement for obstruction of justice. Overruling Urkevich's objections, the district court found the PSR properly calculated the drug quantity and applied the obstruction

of justice enhancement. The district court then sentenced Urkevich to a total of 895 months' imprisonment. Urkevich appeals, raising various claims of error affecting his convictions and the sentences imposed by the district court.

## II.    DISCUSSION
### A.    Jury Instructions

The superseding indictment charged Urkevich "us[ed] and carr[ied], and in furtherance of such drug trafficking crime, possess[ed] a firearm," in violation of 18 U.S.C. § 924(c). However, the jury was instructed solely on a theory Urkevich "possessed a firearm in furtherance of" a drug trafficking crime. Urkevich contends the government failed to prove Urkevich "used" and "carried" the firearms in connection with drug trafficking, as charged in the indictment; therefore, the evidence was insufficient to sustain his firearms convictions under section 924(c).

Generally, we review a district court's formulation of instructions to the jury for abuse of discretion. United States v. Williford, 309 F.3d 507, 509 (8th Cir. 2002). However, because Urkevich did not object to the jury instructions at trial, we review the jury instructions only for plain error. United States v. Hatcher, 323 F.3d 666, 671 (8th Cir. 2003). To constitute plain error, there must be an "error," which is a "[d]eviation from a legal rule," and that error must be "plain," which "is synonymous with 'clear' or, equivalently, 'obvious.'" United States v. Olano, 507 U.S. 725, 732-34 (1993). Plain-error review permits reversal only if the error "was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice." United States v. Griffith, 301 F.3d 880, 883 (8th Cir. 2002) (citation omitted).

Section 924(c)(1)(A) provides enhanced penalties for "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). When, as here, a statute "is worded in the disjunctive . . . , federal pleading requires that an indictment charge in the conjunctive to inform the accused fully of the

charges." United States v. Klein, 850 F.2d 404, 406 (8th Cir. 1988) (citations omitted). However, it is appropriate for the district court to instruct the jury in the disjunctive form used in the statute, because "[p]roof of any one of the violations charged conjunctively in the indictment will sustain a conviction." Id. (citation omitted).

The discrepancy here between the superseding indictment and the jury instructions was a non-fatal variance and did not materially alter the offense for which Urkevich was charged. See United States v. Cuervo, 354 F.3d 969, 990-91 (8th Cir. 2004) (determining reversal not warranted where indictment alleged the defendant "used, carried, *and* possessed a firearm in furtherance of the drug offenses," but jury was instructed to find the defendant guilty if the evidence showed "he used, carried, *or* possessed a firearm"). Urkevich was not prejudiced by any variance between the indictment and the jury instructions. Therefore, we conclude the district court did not plainly err in its formulation of instructions to the jury.

## B.    Sufficiency of the Evidence

Urkevich contends the government presented insufficient evidence to support his convictions for conspiring to distribute methamphetamine and for possessing firearms in furtherance of a drug trafficking crime. Urkevich "confronts a high hurdle with this argument, as we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). We review "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). "We may reverse only if no reasonable jury could have found [Urkevich] guilty." Id.

### 1.    Conspiracy Conviction

To convict Urkevich of conspiracy to distribute methamphetamine, "the government must prove beyond a reasonable doubt (1) a conspiracy with an illegal

purpose existed; (2) [Urkevich] knew about the conspiracy; and (3) he knowingly became a part of the conspiracy." United States v. Ruiz-Estrada, 312 F.3d 398, 402 (8th Cir. 2002). The government can "prove the existence of a conspiracy with direct or circumstantial evidence." Cook, 356 F.3d at 917.

Here, the facts and inferences, when taken together, allowed the jury to reach the reasonable conclusion that Urkevich knowingly participated in a conspiracy to distribute methamphetamine. As a result of searching Urkevich's residence, officers discovered numerous illegal drugs; drug paraphernalia; and tools of the drug trafficking trade, including digital scales in various quantities, safes, drug records, large amounts of cash, a radio channel scanner, surveillance cameras and monitor equipment, and firearms. The government also presented the testimony of several witnesses who stated Urkevich sold and distributed methamphetamine. Urkevich challenges the credibility of the witnesses who testified against him, arguing this testimony was "suspect" because the witnesses were "anxious to reduce the time they would spend in a Federal Penitentiary by testifying against the defendant." Urkevich's challenges to the veracity and credibility of the various witnesses are of no avail, because "[q]uestions of credibility are the province of the jury." United States v. Chavez, 230 F.3d 1089, 1091 (8th Cir. 2000). Urkevich failed to persuade the jury with his arguments, and that failure defeats Urkevich's credibility issue. Considering the evidence in the light most favorable to the verdict, we conclude sufficient evidence, including Urkevich's own statements in which he admitted distributing methamphetamine, supports Urkevich's conspiracy conviction.

### 2.     Firearms Convictions

Urkevich contends insufficient evidence supports his convictions for possessing the firearms in question in furtherance of drug trafficking. "[S]imultaneous possession of drugs and . . . firearm[s] is not alone sufficient to support a conviction under" section 924(c). United States v. Hamilton, 332 F.3d

1144, 1150 (8th Cir. 2003). "Evidence of a nexus between the defendant's possession of the firearm and the drug offense is required." Id.

The evidence presented at trial was sufficient to support the jury's finding that Urkevich possessed the firearms in question in furtherance of his drug trafficking activities. Officers found the loaded nine millimeter Walther PPK .380 caliber pistol under the mattress in Urkevich's bedroom, the .380 caliber pistol and magazine in a toolbox in Urkevich's computer room, and the loaded Winchester 12-gauge shotgun leaning against the wall in Urkevich's living room. The firearms were seized in close proximity to numerous controlled substances and drug paraphernalia and records. This handy availability of the firearms to a myriad of illegal drugs and drug paraphernalia, and the dispersal of the firearms throughout Urkevich's residence, support an inference Urkevich possessed the firearms so they would be ready to protect the drugs and large sums of money. Cuervo, 354 F.3d at 992. In addition, Gallagher, Urkevich's roommate, testified Urkevich kept a shotgun in the residence to "protect the fort." As Urkevich himself admitted, he needed a pistol for protection against Rains, one of Urkevich's drug customers. In addition, Decenzo testified that when she purchased drugs from Urkevich, she saw Urkevich remove a dark-colored handgun from a safe and return the weapon to the safe when their transaction was done. The evidence was more than sufficient to support the jury's finding that Urkevich possessed firearms in furtherance of a drug trafficking offense, as charged in Counts II, III, and V.

## C.    Sentencing Issues

Urkevich argues the district court's application of a two-level obstruction enhancement under U.S.S.G. § 3C1.1, for "attempting to tamper with witnesses and intimidate witnesses," and the district court's drug quantity calculation, violated his rights under Blakely v. Washington, 124 S. Ct. 2531 (2004), because these findings were neither admitted by him nor made by a jury based upon proof beyond a

reasonable doubt. Urkevich further challenges the constitutionality of the Guidelines after the Blakely decision.

In Blakely, the Supreme Court applied the rule set out in Apprendi v. New Jersey, 530 U.S. 466 (2000), and held the imposition–based solely on the sentencing judge's factual findings–of a sentencing enhancement above the range indicated in the State of Washington's Sentencing Reform Act violated the defendant's Sixth Amendment rights, because the facts supporting the findings were neither admitted by the defendant nor found by a jury beyond a reasonable doubt. Blakely, 124 S. Ct. at 2537. During the pendency of this appeal, the Supreme Court held in United States v. Booker, 125 S. Ct. 738 (2005), that "the Sixth Amendment as construed in Blakely does apply to the [Federal] Sentencing Guidelines." Booker, 125 S. Ct. at 746. Under Booker, "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by . . . a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756.

Urkevich did object below to the district court's (1) finding that Urkevich obstructed justice and (2) calculation of drug quantity; however, Urkevich limited his objections to arguing the evidence was insufficient to support the district court's findings. Because Urkevich's objections did not raise a Sixth Amendment objection or even refer to Apprendi or Blakely, our review is limited to determining whether Urkevich's sentence constitutes plain error in light of the Supreme Court's holding in Booker. See United States v. Pirani, No. 03-2871, 2005 WL 1039976, slip op. at 7 (8th Cir. Apr. 29, 2005) (en banc) (slip op.). In order to establish plain error, Urkevich must show "(1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting Johnson v. United States, 520 U.S. 461, 466-67 (1997)). Although Pirani could meet the first two prongs of the

plain error test, Pirani could not show an error that affected his substantial rights, because Pirani was unable to "show a 'reasonable probability,' based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." <u>Pirani</u>, slip op. at 11.

In this case, Urkevich, like the defendant in <u>Pirani</u>, cannot show a "reasonable probability" the district court would have imposed a more favorable sentence if the Guidelines had been applied in an advisory fashion, rather than a binding fashion. Because nothing in the record as a whole indicates the district court would have imposed a more favorable sentence under the new advisory sentencing regime, Urkevich cannot establish the third prong of plain-error analysis and meet his burden of proving the district court committed plain error in imposing the sentencing enhancements. <u>See</u> <u>id.</u>

## III. CONCLUSION

For the foregoing reasons, we affirm Urkevich's conviction and sentence.

_____