# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2369

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　 *
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　Northern District of Iowa.
Ronald Weaver,　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

_____

Submitted: December 9, 2008
Filed: February 6, 2009 (**Corrected February 9, 2009**)

_____

Before WOLLMAN, BYE, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Defendant, Ronald Gene Weaver (Weaver), was convicted by a jury of (1) conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846; and (2) possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). The district court[1] sentenced Weaver to two concurrent sentences of 300 months imprisonment, and five years of supervised release. Weaver now challenges his conviction claiming (1) there was insufficient evidence to support his conviction, (2) the jury verdict form

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

was inconsistent with the jury instructions, and (3) the trial court erred in denying Weaver's motion for mistrial. We affirm.

## I. BACKGROUND

For at least one month, police officers in Sioux City, Iowa, were investigating the suspected distribution of crack cocaine from a residence located at 1430 Summit Street. On July 29, 2005, an informant conducted a controlled purchase of one to two grams of crack cocaine from an occupant at that address. After the controlled purchase, officers obtained a search warrant and entered the home. Several of the occupants attempted to flee. Weaver and one of his co-conspirators were arrested while running from the residence. The police searched the home and discovered approximately 150 grams of crack cocaine. The police also seized drug manufacturing and packaging materials, a digital scale, and a significant amount of cash, including $900 found on Weaver.

Weaver and his four co-defendants were charged with conspiracy to distribute crack cocaine and possession with intent to distribute crack cocaine. During Weaver's trial, the government presented testimony from five police officers and twelve cooperating witnesses. The officers detailed (1) their involvement in the surveillance of the home located at 1430 Summit Street in Sioux City, Iowa; (2) their use of an undercover informant to successfully purchase cocaine from one of the co-conspirators; (3) their execution of a search warrant and the seizure of a significant amount of crack cocaine and other drug evidence; and (4) their conversations with cooperating witnesses about Weaver and the overall conspiracy.

The government further presented testimony from twelve cooperating witnesses, including Keri Goodwin (Goodwin), Marty Landfair (Landfair), Anthony Grenier (Grenier), Tommy Quince (Quince), Laurie Scofield (Scofield), Moses Vanpelt (Vanpelt), Patrick Harrell (Harrell), James King (King), Myree Coleman Jr. (Coleman), Gailene Jones (Jones), Donald Anderson (Anderson), and Pearl Freemont

-2-

(Freemont). Goodwin, Landfair, Grenier, Quince, Scofield, Freemont, and Jones testified to purchasing crack cocaine on numerous occasions from Weaver and his co-defendants at the 1430 Summit Street address.

King and Vanpelt each testified to observing Weaver sell crack cocaine to other people. Coleman related he purchased user quantities of crack cocaine from Weaver at least twenty-five times during 2004 and 2005 at various locations. Coleman further testified: (1) Coleman witnessed Weaver sell cocaine to one other person, (2) Coleman had conversations with Weaver in which Weaver disclosed information about Weaver's methods in conducting drug sales, and (3) Weaver offered Coleman an opportunity to transport cocaine from Kansas City, Kansas, to Sioux City, Iowa, in exchange for $7,000. Anderson and Harrell reported their personal knowledge of Weaver's involvement with drug trafficking, including Weaver dealing with a known crack distributor in 2005. Several of the witnesses also testified Weaver appeared to be the man in charge of the entire operation, as Weaver often directed others, including his co-defendants, to conduct specific drug sales.

The jury returned a completed verdict form reflecting their findings that Weaver was guilty of (1) conspiracy to distribute over 50 grams of cocaine base, and (2) possession with intent to distribute over 50 grams of cocaine base. On June 2, 2008, the district court sentenced Weaver to 300 months imprisonment on each count, to be served concurrently, and five years of supervised release. This appeal followed.

## II. DISCUSSION
### A. Sufficiency of the Evidence

On appeal, Weaver claims the government failed to present sufficient evidence to support Weaver's convictions for conspiracy to distribute and for possession with intent to distribute crack cocaine. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that

support the verdict." United States v. Bower, 484 F.3d 1021, 1025 (8th Cir. 2007) (citations omitted). See United States v. Lopez, 443 F.3d 1026, 1030 (8th Cir. 2006) (en banc). A verdict will only be overturned if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. See United States v. Gray, 369 F.3d 1024, 1028 (8th Cir. 2004).

"To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007) (quoting United States v. Espino, 317 F.3d 788, 792 (8th Cir. 2003)). "Either direct or circumstantial evidence can provide the basis of a [conspiracy] conviction." United States v. Jiminez-Perez, 238 F.3d 970, 973 (8th Cir. 2001) (citing United States v. Beckman, 222 F.3d 512, 522 (8th Cir. 2000)).

"To sustain a conviction [for possession with intent to distribute] under 21 U.S.C. § 841, the jury 'must find that the evidence supports that (1) the defendant knowingly possessed [a controlled substance] and (2) that defendant intended to distribute the [controlled substance].'" United States v. Cole, 380 F.3d 422, 425 (8th Cir. 2004) (quoting United States v. Wesley, 990 F.2d 360, 364-65 (8th Cir. 1993)).

Upon our review of the evidence presented at trial, the jury's verdict was supported by sufficient evidence to sustain a conviction for each of these offenses. Several police officers testified about the drug conspiracy and Weaver's involvement in that conspiracy. Seven cooperating witnesses testified they personally purchased crack cocaine from Weaver and his co-defendants at 1430 Summit Street. Another witness testified to purchasing crack cocaine at least twenty-five times from Weaver at several locations. Four cooperating witnesses testified they observed Weaver sell crack cocaine to other people. In total, twelve cooperating witnesses testified against Weaver and implicated Weaver in the drug conspiracy. This testimony was

corroborated by evidence seized from the residence from which Weaver and others fled, including 150 grams of cocaine, large amounts of cash, and other indicia of the manufacture and distribution of cocaine.

Weaver contends the testimony of the cooperating witnesses is unreliable because the cooperating witnesses are "convicted felons with histories of drug use and addiction who were looking to reduce their sentences by testifying regarding their knowledge of Weaver's involvement in narcotics trafficking." Weaver's argument essentially attacks the credibility of the cooperating witnesses.

To reach a verdict, a jury is often required to weigh the credibility of the witnesses. See, e.g., United States v. Daugherty, 952 F.2d 969, 970 (8th Cir. 1991) (citing United States v. Bailey, 444 U.S. 394, 414-15 (1980)). "It is the function of the jury, not an appellate court, to resolve conflict[s] in [the] testimony or judge the credibility of [the] witnesses." Smalley v. United States, 798 F.2d 1182, 1188 (8th Cir. 1986) (quoting United States v. Harrison, 671 F.2d 1159, 1162 (8th Cir. 1982)). "We are especially unwilling to overturn a jury's verdict when it so manifestly depends on credibility assessments." Daugherty, 952 F.2d at 970 (citing United States v. Canales, 744 F.2d 413, 422 (5th Cir. 1984)).

In the present case, the district court instructed the jury members that they may "have to decide what testimony you believe and what testimony you do not believe," and provided the jury with factors to consider when making such a determination. The district court further instructed the jury: "You may give the testimony of these witnesses such weight, if any, as you think it deserves. Whether or not testimony of a witness may have been influenced by his hope of receiving a reduced sentence is for you to decide." Throughout Weaver's trial, the jury had ample opportunity to observe and evaluate the credibility of each cooperating witness, and in the absence of evidence to the contrary, we presume the jury did so. See United States v. Harper, 466 F.3d 634, 647 (8th Cir. 2006). Because the jury's credibility determinations were

well supported by sufficient evidence, the jury reasonably found Weaver guilty beyond a reasonable doubt.

Weaver also challenges the dates on which he was alleged to have engaged in drug activity, claiming to have been incarcerated or with family members on those dates. To support this challenge, Weaver refers to the testimony of his family members, and a stipulation listing the dates of Weaver's incarceration. During trial, the district court permitted Weaver to introduce a time-line in an effort to clarify the dates and time periods Weaver was alleged to have engaged in the charged offenses. With the assistance of this time-line, the jury was able to compare Weaver's dates of incarceration to the dates witnesses testified about Weaver's involvement in the sale of cocaine. The jury appropriately had an opportunity to weigh the credibility of the witnesses and determine whether Weaver engaged in drug activity on the dates alleged. Viewing the evidence in the light most favorable to the verdict, more than sufficient evidence supports the jury finding Weaver guilty beyond a reasonable doubt.

### B.    Jury Instructions and Verdict Form

Weaver also claims the jury instructions and the jury verdict form were inconsistent with one another. Generally, "[w]e review the district court's formulation of jury instructions for abuse of discretion." United States v. Williford, 309 F.3d 507, 509 (8th Cir. 2002) (citing United States v. Parker, 32 F.3d 395, 400 (8th Cir. 1994)). "However, because [Weaver] did not object to the jury instructions at trial, we review the jury instructions only for plain error." United States v. Urkevich, 408 F.3d 1031, 1036 (8th Cir. 2005) (citation omitted). "Plain-error review permits reversal only if the error 'was so prejudicial as to have affected substantial rights resulting in a miscarriage of justice.'" Id. (quoting United States v. Griffith, 301 F.3d 880, 883 (8th Cir. 2002)).

Weaver's jury was provided with a series of instructions before deliberations. One of these instructions required the jury to determine the total quantity, in grams, of cocaine base for which Weaver was responsible. Weaver maintains this is inconsistent with the verdict form which "did not have a blank line for the jury to indicate the amount in terms of grams that they found Weaver responsible for." Weaver argues, "The interplay between the jury verdict form and instructions created the potential for the jury to be confused thereby denying Weaver his right to a fair trial."

The jury instructions and the jury verdict form are consistent. The instructions explain the jury should first determine whether the defendant is guilty of the offense. The instructions then state, if the defendant is found guilty, "[y]ou must determine the total quantity of cocaine base for which the defendant can be held responsible in terms of *grams*. You must then indicate in the Verdict Form the *range* within which that *total quantity* falls." (emphasis in original).

The jury was provided two jury verdict forms, one for each of the offenses charged. For each offense, the verdict form first asked, as directed in the jury instructions, whether the jury believed the defendant was guilty or not guilty. The jury clearly marked an "X" on the line next to the word "Guilty" on both verdict forms. When the jury found Weaver guilty, both verdict forms required the jury to consider first, whether the "Government has proved beyond a reasonable doubt that the amount of cocaine base involved exceeded 50 grams of cocaine base." If not, the jury was then asked to consider whether the government proved the amount of cocaine base involved exceeded 5 grams. On both verdict forms, the jury indicated its belief the government proved beyond a reasonable doubt the total amount of cocaine base involved exceeded 50 grams.

The requirements of each verdict form are consistent with the jury instruction which required the jurors to determine the total quantity of cocaine and "then indicate

in the Verdict Form the *range* within which that *total quantity* falls." Weaver's sole argument is the verdict form did not provide a line to indicate the total quantity involved. The jurors were never told they had to write an exact figure on the verdict form, and such an exercise was unnecessary. There is no evidence the jurors were confused about the jury instructions or the verdict form. The district court did not commit plain error, or any error, in instructing the jury or receiving the jury's verdict.

### C. Mistrial

Before trial, the district court ruled, pursuant to Weaver's motion in limine, that the government was precluded from presenting evidence regarding Weaver's prior criminal history, including arrests or charges without convictions, absent court approval. On appeal, Weaver claims the district court erred when it denied his motion for mistrial due to the government's alleged violation of the district court's in limine order.

During trial, Weaver attempted to prove he could not be guilty of the charged offenses because he was either incarcerated or with family members during some of the time he was alleged to have engaged in drug activity. In response, the government re-called Officer Brad Downing to testify as a rebuttal witness. In an attempt to clarify the relevant time frame, the prosecutor questioned Officer Downing about the time frame surrounding Weaver's initial charges in this case, which originated in state court. The prosecutor asked Officer Downing, "And what [was Weaver] charged with originally in regards to charges and basically times?" This question was never answered because Weaver's attorney objected on relevance grounds and moved for a mistrial, alleging the government violated the district court's pretrial motion in limine. During a sidebar conference, the district court denied the mistrial motion. The district court allowed the government to present testimony from Officer Downing pertaining to the time of Weaver's arrest on the underlying state court charges for the purpose of rebutting Weaver's alibi defense.

"[T]he district court's decision to deny a motion for a mistrial is reviewed for an abuse of discretion." United States v. Brandon, 521 F.3d 1019, 1026 (8th Cir. 2008) (citing United States v. Urick, 431 F.3d 300, 304 (8th Cir. 2005)). "We give the district court 'broad discretion to grant or deny a motion for mistrial because it is in a far better position to weigh the effect' of any possible prejudice." United States v. Urqhart, 469 F.3d 745, 749 (8th Cir. 2006) (quoting United States v. Davidson, 122 F.3d 531, 538 (8th Cir. 1997)). "Further, the district court is in the best position to craft a remedy, given that 'less drastic measures [than mistrial] such as a cautionary instruction are generally sufficient to alleviate prejudice' stemming from accidental comments." Id. (quoting Davidson, 122 F.3d at 538). "Finally, where there is 'substantial evidence of appellant's guilt, any error in the failure to declare a mistrial was harmless.'" Id. (quoting Urick, 431 F.3d at 305).

The district court did not abuse its discretion when it denied Weaver's motion for a mistrial. Officer Downing's testimony was presented to rebut evidence offered by Weaver. The district court's motion in limine addressed only prior criminal history. The prosecutor did not ask Officer Downing about Weaver's prior criminal history, but only about the facts surrounding the present case. Officer Downing did not answer the challenged question, and no impermissible evidence was presented to the jury. Despite this, Weaver argues his defense was prejudiced when the jury heard the question. Even if Weaver's defense had been prejudiced by the mere asking of the question, the district court remedied any prejudice when the court instructed the jury that evidence "consists of the testimony of witnesses," and "questions . . . by lawyers . . . are not evidence." The district court did not abuse its discretion. Further, the evidence against Weaver was substantial, and any error would be harmless.

## III.   CONCLUSION
We affirm the judgment of the district court.

_____