# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3022
_____

United States of America

*Plaintiff - Appellee*

v.

Guadalupe Urbina-Rodriguez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Joplin
_____

Submitted: November 20, 2020
Filed: February 5, 2021
_____

Before COLLOTON, MELLOY, and KELLY, Circuit Judges.
_____

MELLOY, Circuit Judge.

A jury convicted Defendant Guadalupe Urbina-Rodriguez of: (1) possessing 50 grams or more of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1) & (b)(1)(A); (2) possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); and (3) possessing a firearm as a previously convicted felon, 18 U.S.C. §§ 922(g)(1) & 924(a)(2). He appeals the sufficiency of

the evidence as to one element of one charge: whether possession of the firearm was in furtherance of drug trafficking.

Our review is highly deferential: we must affirm unless no reasonable juror could find the defendant guilty beyond a reasonable doubt. See United States v. Fetters, 698 F.3d 653, 657 (8th Cir. 2012). We view the facts in the light most favorable to the jury's verdict and draw all reasonable inferences in support of the verdict. Id. Viewed in this light, evidence showed that Urbina-Rodriguez personally took delivery of a package from California addressed to "Jose Nunez" at Urbina-Rodriguez's rural Missouri home. Postal inspectors and police officers previously had determined the package contained a controlled substance. When accepting the package, Urbina-Rodriguez claimed to be Jose. Within one or two minutes of package delivery, officers arrived to execute a previously obtained search warrant. They discovered Urbina-Rodriguez sitting in his front lawn in a chair. Beside him was a second chair containing the package of methamphetamine. Immediately adjacent to Urbina-Rodriguez, a loaded Marlin .22 caliber rifle rested against a tree.

Urbina-Rodriguez admitted to officers that he had received several similar packages in the past. He also stated that he had the rifle for "protection," but he did not say from what. His wife told officers that two women in a yellow car typically showed up after the delivery of such packages. A search of the property revealed no other contraband, but subsequent investigation revealed that twelve packages from California had been delivered to Urbina-Rodriguez's address in the seven months preceding execution of the warrant. Subsequent analysis showed that the final package contained 430.8 grams of actual methamphetamine.

At trial, Urbina-Rodriguez argued that he possessed the rifle merely to protect the many chickens he kept on his rural property. He presented evidence, including a neighbor's testimony, tending to show that he spent a great deal of timing sitting in his front yard, kept many chickens, and suffered from varmints such as raccoons and

possums killing his chickens. According to Urbina-Rodriguez, the physical proximity of the gun to the drugs was mere happenstance—when officers arrived to execute the warrant, he had just received the package and his varmint gun happened to be present. The jury rejected his explanation and convicted him of possessing the firearm in furtherance of drug trafficking. The district court[1] denied motions for a new trial and a judgment of acquittal.

On appeal, he argues the government was required to present expert testimony to show that he possessed the firearm in furtherance of drug trafficking. In addition, he argues generally that the evidence was insufficient to show he possessed the rifle for any purposes other than protecting his chickens.

A jury may find the required nexus of 18 U.S.C. § 924(c)(1)(A) based on facts that tend to show the use of firearms to protect drugs or drug proceeds, or to embolden traffickers generally in their receipt, storage, and distribution of drugs. See United States v. Druger, 920 F.3d 567, 570 (8th Cir. 2019) ("The nexus . . . may be established in a variety of ways."). Although the government typically offers expert testimony to describe the nexus and "connect the dots" for jurors in such cases, the government is not required as a matter of course to present expert testimony linking firearm possession to drug trafficking. See, e.g., United States v. Saddler, 538 F.3d 879, 888–89 (8th Cir. 2008) (affirming conviction without expert testimony where proximity of firearms and drugs supported the inference that the firearms furthered the trafficking crime); United States v. Urkevich, 408 F.3d 1031, 1037 (8th Cir. 2005) (same).

Although the mere simultaneous possession of a firearm and drugs is insufficient to show the required nexus, United States v. Hilliard, 490 F.3d 635, 640

---

[1]The Honorable Douglas Harpool, United States District Judge for the Western District of Missouri.

(8th Cir. 2007), the present case contains strong evidence beyond simultaneous possession.  First, the jury could find the proximity of the rifle to the drugs supports the required nexus even though Urbina-Rodriguez argued he possessed the gun for a different reason.  See, e.g., Urkevich, 408 F.3d at 1037 ("This handy availability of the firearms to a myriad of illegal drugs and drug paraphernalia, and the dispersal of the firearms throughout [the] residence, support an inference [the defendant] possessed the firearms so they would be ready to protect the drugs and large sums of money.").  Second, Urbina-Rodriguez's wife's statement shows he anticipated immediate interactions with other drug traffickers, suggesting he anticipated potential danger.  Third, the drugs in the package were worth approximately $43,000, an amount jurors would understand as inducing a desire for protection.  Fourth, the government introduced evidence that Urbina-Rodriguez had been convicted on prior occasions for trafficking methamphetamine, tending to show his knowledge and familiarity with drug trafficking.  See Fed. R. Evid. 404(b).  And fifth, the pattern of package deliveries to the home coupled with the last package's value and Urbina-Rodriguez's ready claim to be "Jose" show that he anticipated the package's arrival.  If the jury believed he anticipated the package's arrival, the jury could easily conclude that the rifle's location was not mere happenstance.  On these facts, the jury permissibly found the required nexus without the guidance of expert testimony and rejected the claim that Urbina-Rodriguez's express reference to "protection" related solely to protecting chickens against wildlife.

We affirm the judgment of the district court.

_____